## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KORMENDI\GARDNER PARTNERS,<br><br>            Plaintiff,<br><br>*v.*<br><br>SURPLUS ACQUISITION VENTURE, LLC<br><br>and<br><br>GOVERNMENT LIQUIDATION.COM, LLC<br><br><br>            Defendants. | Case No.: 1:08-cv-00423-HHK |

## KORMENDI\GARDNER'S
## <u>MOTION TO REMAND</u>

Pursuant to 28 U.S.C. § 1447, Plaintiff, Kormendi\Gardner Partners ("KGP"), through counsel hereby moves this Court to remand this case to the Superior Court for the District of Columbia and in support hereof contemporaneously submits its Memorandum in Support of its Motion to Remand, which is incorporated herein by reference.  Plaintiff, in support of its motion states:

1.      Defendants, Surplus Acquisition Venture, LLC ("SAV") and  Government Liquidation.Com, LLC ("GL") (collectively "SAV/GL" or "Defendants") removed this action from the Superior Court for the District of Columbia pursuant to their Notice of Removal dated March 10, 2008.  KGP's action alleges that the Defendants have breached obligations owed to KGP as a third party beneficiary of the Defendants'

contract with the Defense Reutilization and Marketing Service ("DRMS").[1] The bases of jurisdicition they invoke to support the removal of KGP's action to this Court are without merit.[2]

2.     Contrary to Defendants' assertions in the Notice of Removal, KGP's suit does not arise under federal law insofar as this action is premised upon state law causes of action for breach of contract and quantum meruit.  Hence, the allegations of KGP's suit do not implicates issues under federal law. Even if it could be argued that such issues were alleged, there are no principles of federal law or policy that conflict with the law of the District of Columbia.  And, the mere fact that the Defendants' contract is with the Department of Defense, the contract simply relates to the disposition of surplus federal property and not for the provision of products or services necessary to national security. Accordingly, Defendants removal premised on federal question jurisdiction pursuant to 28 U.S.C. § 1331 fails.

3.     Defendants' assertion that federal jurisdiction exists pursuant to 28 U.S.C. § 1442(a) similarly is unavailing.  The Defendants voluntarily ceased paying compensation owed to KGP.  That the cessation of payments occurred pursuant to a modification of their contract with DRMS makes no difference for jurisdictional purposes. The Defendants voluntarily agreed to the contract modification and so did not take action pursuant to the direction of a federal officer.  Moreover, they do not aver a

---

[1] DRMS is an agency within the United States Department of Defense ("DoD"), which, among other activities, arranges for the disposition of surplus and scrap material by DoD and its constituents.

[2] Defendants notified this Court of the removal of this action when they filed their Notice of Removal of Civil Action by Defendants Surplus Acquisition Venture, LLC and Government Liquidation.Com, LLC. That filing shall be referred to as the "Notice of Removal."

meritorious federal defense.  Thus, Defendants' assertion that removal is proper under 28 U.S.C. § 1442(a) does not support the assertion of this Court's jurisdiction.

4.      Finally, Defendants reserved the right to assert diversity jurisdiction pursuant to 28 U.S.C. § 1332.  There is not complete diversity of the parties because the Plaintiff and one or both of the Defendants are deemed citizens of the District of Columbia.  Hence, diversity jurisdiction is not proper in this case.

**WHEREFORE**, for the reasons stated herein and more fully stated in the contemporaneously filed memorandum in support of this motion, Kormendi\Gardner Partners respectfully request that this action be remanded to the Superior Court for the District of Columbia.

Respectfully submitted,

**BROWN RUDNICK BERLACK ISRASELS** LLP

_____
Kenneth B. Weckstein
District of Columbia Bar No. 239301
kweckstein@brownrudnick.com
Howard A. Wolf-Rodda
District of Columbia Bar No. 449377
hwolf-rodda@brownrudnick.com
601 Thirteenth Street, N.W.
Suite 700
Washington, D.C. 20005
(202) 536-1700 (voice)
(202) 536-1701 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Kormendi\Gardner's Motion to Remand to be served electronically in accordance with the Court's electronic filing guidelines to:

Craig A. Holman, Esq.
Matthew D. Michael, Esq.
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004

_____
Howard A. Wolf-Rodda

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KORMENDI\GARDNER PARTNERS,

Plaintiff,

*v.*

SURPLUS ACQUISITION VENTURE, LLC

and

GOVERNMENT LIQUIDATION.COM, LLC

Defendants.

Case No.: 1:08-cv-00423-HHK

**KORMENDI\GARDNER'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO REMAND**

Plaintiff, Kormendi\Gardner Partners ("KGP"), through counsel submit this Memorandum in Support of its Motion to Remand this action, which Defendants, Surplus Acquisition Venture, LLC ("SAV") and  Government Liquidation.Com, LLC ("GL") (collectively "SAV/GL" or "Defendants") removed to this Court contrary to law.[1] Accordingly, KGP respectfully moves that this action be remanded to the Superior Court for the District of Columbia and, in support thereof, states:

**BACKGROUND**

KGP originally filed this action on January 23, 2008.  Service of the suit was obtained February 19, 2008.  Although KGP's complaint describes a complex transaction, the core allegations are quite simple: SAV/GL agreed to pay money to KGP to compensate KGP for financial advisory services that resulted in contracts with the

---

[1] Defendants notified this Court of the removal of this action when they filed their Notice of Removal of Civil Action by Defendants Surplus Acquisition Venture, LLC and Government Liquidation.Com, LLC. That filing shall be referred to as the "Notice of Removal."

Defense Reutilization and Marketing Service ("DRMS").[2] Complaint ¶ 22. These contracts enabled Defendants to earn profits by purchasing and reselling military surplus and scrap material that DRMS identified for resale to the general public. Complaint ¶ 21 These purchase and resale transactions were formulated by KGP and established a unique and somewhat complex process to facilitate the disposition of this material. *See generally* Complaint ¶¶ 22-51 & ¶¶ 52-60 (respectively describing surplus and scrap resale programs). Under this process, Defendants, through GL, purchased Government designated material from DRMS at a fraction of its resale value. Having "purchased" the material, GL undertook the effort to market and resell it to the public. GL then, after deducting the costs of its resale efforts, distributed the proceeds according to contractually prescribed percentages to DRMS, SAV and KGP.[3] *See* Complaint ¶¶ 38-46.

Defendants' obligations to KGP are unambiguously stated throughout their contract with DRMS – most notably in Articles 5 and 16 (respectively establishing the payment terms required of Defendants); *see also* CV2 Contract, Article 8 §§ 5 & 5(C) – (F) & Article 22, § 2 (respectively establishing duties to submit reports accounting for transactions to KGP and to provide notices to KGP). Notably, the CV2 Contract did not purport to give any party the express ***right*** to terminate payments to KGP – in fact, the CV2 Contract was silent on this issue. The CV2 Contract simply stated that it could not

---

[2] DRMS is an agency within the United States Department of Defense ("DoD"), which, among other activities, arranges for the disposition of surplus and scrap material by DoD and its constituents.

[3] The contracts in this case implemented programs (1) to sell surplus property designated by DRMS (known as the "Commercial Venture" or "CV") and (2) to sell scrap material (known as the "Scrap Venture" or "SV"). This action alleges breach of duties owed under the contract that implemented the Commercial Venture. As the contract in this case was the second incarnation of the CV program, it is designated as the "CV2 Contract." *See* Complaint ¶¶ 25-34 and 36-37 (describing history of CV contracts).

be modified except in writing signed by the party against whom the modification would be enforced. CV2 Contract at Article 22, § 10.

On August 15, 2006, Defendants voluntarily executed a contract modification in which Defendants agreed to cease payments to KGP.  *See* Notice of Removal, Exhibit D; *see also* Defendants' Notice of Removal, Exhibit B, Declaration of William P. Angrick, III at ¶ 3 ("Angrick Declaration") (stating that Defendants agreed to the Government's request to increase the percentages to be paid to DRMS).   By agreeing to cease payments to KGP in accordance with Modification No. 9, Defendants violated their obligation to pay KGP under the CV2 contract.  This is so because, among other things, Defendants were on notice that they could not eliminate the payments to KGP. Long before the execution of Modification No. 9, KGP notified Defendants that it expected to be paid in accordance with the terms of the CV2 Contract and that it would not consent to any modification of the Defendants' duty to pay.  Complaint, ¶¶ 100 – 101 (citing letter dated September 25, 2003). And, KGP had no other entitlement to compensation because KGP's contract with DRMS stated that "the financial advisor fee shall be paid by the Joint Venture (i.e., Defendants) and not by [DRMS under] this contract." KGP Contract with DRMS (Contract No. SP-4410-R-1005) at page 20 of 68; *see also* Complaint ¶¶ 18-19.  Accordingly, KGP does not allege that the Government breached its obligation to KGP.  To the contrary, KGP alleges that Defendants violated their contractual obligations by ceasing to pay KGP and that their obligation to pay KGP did not cease as a consequence of their execution of Modification No. 9.

Defendants purport to remove KGP's suit to this Court on two grounds:   (1) federal question jurisdiction; and (2) federal officer removal.  Defendants reserved the right to additionally base their removal on diversity grounds.  None of these purported bases of jurisdiction are valid in this case.

## ARGUMENT

KGP is owed money.  It is owed money by the Defendants, which agreed to pay KGP.   KGP filed suit against the Defendants because they breached their duty to compensate KGP.  KGP has not sued the United States Government and KGP does not allege that the Government owed money to KGP.   KGP simply claims that the Defendants agreed to pay KGP; that KGP's entitlement arises out of being a third party beneficiary of the obligation undertaken by the Defendants; and that, by ceasing to pay, the Defendants breached their obligation.

A defendant bears a heavy burden to support removal of a case to federal court. As this Court has stated,

> Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). . . . [I]f at any time prior to final judgment it becomes clear that there is a defect in removal procedures or that the removal court lacks subject-matter jurisdiction, the removal court must remand the case to the state court from which the defendants originally removed the case. [28 U.S.C.] § 1447(c). If the federal court lacks subject-matter jurisdiction, remand is mandatory and not reviewable on appeal. *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C.Cir.2002). The court strictly construes removal status because of federalism concerns. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Where the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand. *Univ. of S. Alabama v. Am. Tobacco Co.*, 168

F.3d 405, 411 (11th Cir.1999); *Nwachukwu v. Karl*, 223 F.Supp.2d 60, 66 (D.D.C.2002). Finally, the defendant bears the burden of proving the propriety of removal, and if the defendant cannot meet this burden, the court must remand the case. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); *Nat'l Org. for Women v. Mutual of Omaha Ins. Co.*, 612 F.Supp. 100, 101 (D.D.C.1985) (Flannery, J.); *Gateway 2000, Inc. v. Cyrix Corp.*, 942 F.Supp. 985, 989 (D.N.J.1996).

*Johnson-Brown v. 2200 M Street, LLC*, 257 F.Supp. 2d 175, 177-78 (D.D.C. 2003).


## A.  FEDERAL QUESTION JURSIDICTION

Defendants assert that this action "raises federal law issues and involves matters of unique and significant federal interest." Notice of Removal at 6. This assertion of federal jurisdiction fails because KGP's complaint seeks relief under District of Columbia law for compensation owed to it as a third party beneficiary of the contract between Defendants and the Government.  District of Columbia law is consistent with applicable principles of federal common law regarding the rights of third party beneficiaries, and the mere fact that the relied upon contract happens to be performed under the auspices of the Department of Defense does not, by itself, give rise to a vital national security interest that warrants federal jurisdiction.  This particularly is true where, as here, the contract in question provides for the disposal of surplus government property deemed unnecessary to military use and *not* the development and production of items for use in defense of the nation.

Generally, a defendant may remove a civil case filed in state court if a federal court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). A Court must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Generally, a state law contractual dispute between private parties under a federal contract will not present questions of federal law that predominate the action justifying the assertion of federal jurisdiction.   *See Whittaker Corp. v. Calspan Corp.*, 810 F. Supp. 457, 462 (W.D.N.Y. 1992).

Also, an action will not be subject to federal question jurisdiction unless (1) the allegations of a "well-pleaded complaint" assert causes of action created by federal law or (2) the plaintiff's right to relief "necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 140 (2d Cir. 2005).  Thus. The existence of a federal question is "determined solely by reference to plaintiff's own claim" and "not by reference to statements made in anticipation or avoidance" of possible defenses premised upon federal law.  *Id.*

Here, Defendants ignore the above is basic principle and assert that this action implicates unique federal interests and involves a significant conflict between an "identifiable federal policy or interest and state law [or that] the operation of state law would frustrate specific objectives of federal legislation" and thus the existence of federal jurisdiction is governed by *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Notice of Removal at 7.  Defendants raise lofty concerns over the need to promote the uniformity of law when a lawsuit relates to a contract that affects national security.  Defendants, however, overstate the significance of this case.  This is a state law breach of contract case premised on state law applicable to third party beneficiaries; the contract from which this action arises concerns the disposition of surplus government property, not the provision of material for national security purposes; and,

there is no federal policy that conflicts with state law giving legal rights to third party beneficiaries.

Even if such interests were present, the *Boyle* analysis is unavailing because *Boyle's* holding did not address jurisdictional questions because the case properly was before the Court pursuant to diversity jurisdiction. The *Boyle* Court thus did not consider whether the case gave rise federal question jurisdiction based upon the allegations of a "well-pleaded complaint." *Empire*, 396 F.3d at 141. Thus, even if the elements of the *Boyle* analysis are satisfied, the question remains as to whether "the federal common law issue appears on the face of the plaintiff's well-pleaded complaint." *Id.* at 143 n.4.  If the answer is no, there is no basis for federal question jurisdiction. *See id.* at 142-43. Here, KGP's complaint alleges a state law cause of action and its claim fully can be adjudicated without resort to federal law.

Even if the Court determines that the complaint arguably raises federal common law issues, federal jurisdiction depends on whether the case arises under the laws of the United States. Title 28, U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Supreme Court has stated that "[t]here is, of course, 'no federal general common law.'" *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (*quoting Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)).  Section 1331 jurisdiction, however, may support claims to the extent they are "founded upon federal common law . . . ." *Illinois v. City of Milwaukee*, 406 U.S. 91, 101, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972).  The need to formulate federal common law "are few and restricted" falling "into essentially two categories" one

of which is the basis of Defendants' assertion of federal question jurisdiction, *i.e.*, "those in which a federal rule of decision is necessary to protect uniquely federal interests. . . ." *Texas Industries*, 451 U.S. at 640. Such uniquely federal interests arise if "there is an overriding federal interest in the need for a uniform rule of decision." *Illinois*, 406 U.S. at 105-06 n. 6. This test is met "only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Texas Industries*, 451 U.S. at 641.

Federal courts are not authorized to invoke federal common law jurisdiction solely because a lawsuit involves a federal interest or even a uniquely federal interest. "That merely establishes a necessary, not a sufficient, condition for the displacement of state law." *Boyle*, 487 U.S. at 507. Thus, "[d]isplacement will occur only where ... a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law' . . . or the application of state law would 'frustrate specific objectives' of federal legislation. . . ." *Id.* (citations omitted); *see also Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68 (1966); *accord Texas Industries*, 451 U.S. at 640.

Defendants assert that the government contractor defense derived from *Boyle* and its progeny insulate it from liability in this action. By extension, they argue that this defense establishes this as a case arising under federal law. Their reliance on *Boyle* is misplaced. The underlying premise of *Boyle* is that, pursuant to the discretionary function exception to the Federal Tort Claims Act, contractors performing the will of the Government should not be liable for tort damages insofar as the contractor is

performing a discretionary function of the Government.  Government liability for such functions remains within the scope of retained sovereign immunity, thus it cannot be liable for torts arising out of that tort liability. The obvious corollary to that point is that, if the Government is not cloaked by its sovereign immunity, neither is the contractor.  For claims arising under Government contracts, the Government has waived its sovereign immunity.  *See, e.g.*, Tucker Act, 28 U.S.C. § 1491; Contract Disputes Act 41 U.S.C. §§ 607, 609.  Given the Government's waiver of immunity, *Boyle* is inapposite.

The adjudication of this case by the Superior Court of the District of Columbia will not lead to a conflict between the operation of state law and federal common law.  The fact that this case seeks the enforcement of an obligation owed to a third party beneficiary does not mean federal common law should govern. Here, in that District of Columbia law does not disagree with federal common law on the issue of third party beneficiary status under government contracts, there is no need to resolve any choice of law dispute. Under District of Columbia law, a third party is entitled to enforce a contractual obligation when the third party is an intended beneficiary of the contract in question. *Aetna Cas. & Sur. Co. v. Kemp Smith Co.*, 208 A.2d 737, 739 (1965) (sub-sub contractor entitled to recover payment from contractor pursuant to its obligation to pay defaulting intermediate subcontractor for services provided by sub-subcontractor); *see also W. Union Tel. Co. v. Massman Constr. Co.*, 402 A.2d 1275, 1277 (D.C.1979) (telegraph company not expressly named as a beneficiary under agreement between transit authority and construction contractor entitled to sue contractor where indemnification provision states that contractor would pay for damages to utilities); *Moran v. Audette*, 217 A.2d 653, 654 (D.C.1966) (both cited in Monument Realty LLC v.

Washington Metropolitan Area Transit Authority, --- F.Supp.2d ----, 2008 WL 510333 D.D.C.,2008).  Federal cases recognize that state and federal law both follow the same general principles of contract law with respect to third party beneficiary status.  *See Angleton v. Pierce*, 574 F.Supp. 719, 735 (D.N.J.1983) (noting that both federal and New Jersey common law apply the same "general principle ... that a third party acquires enforceable contract rights if the parties to the contract intended to confer a benefit upon him, but not if he benefits only incidentally from the contract"), *aff'd* 734 F.2d 3 (3rd Cir.1984).   Moreover, federal courts considering questions under federal Government contracts follow the principles of the second Restatement of Contracts. *See*, *e.g.*, John Cibinic, Jr. & Ralph C. Nash, Jr., ADMINISTRATION OF GOVERNMENT CONTRACTS at 155 (3d ed. 1995) (and cases cited therein) ("courts and boards [of contract appeals] typically follow the rules of RESTATEMENT, SECOND, CONTRACTS" to discern the meaning of a government contract); *see also  Allstate Transp. Co., Inc. v. Southeastern Pennsylvania Transp. Authority*, No. CIV. A. 97-1482, 2000 WL 329015, *15-*17 (E.D.Pa. March 27, 2000) (stating that federal courts in 3rd Circuit "apply the rules for government contracts established in the second Restatement of Contracts").

Given the law governing third party beneficiary claims under District of Columbia law and the analogous principles of federal common law, the Defendants cannot meet the substantial burden required to invoke federal question jurisdiction.   Indeed, the Supreme Court has specifically held that "generalized pleas for uniformity" do not sufficiently allege an actual conflict between state law and a federal interest. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 730 (1979*); see also See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994); *B.F. Goodrich v. Betkoski*, 112 F.3d 88, 90, 91

(2d Cir.1997) (federal interest in uniformity does not justify "displacing state law in favor of a federal common law rule" absent actual, substantial conflict with state law).  In fact, a party must "specifically show[]" the conflict between state law and the federal interest; mere general allegations are insufficient.  *Atherton v. FDIC*, 519 U.S. 213, 117 S.Ct. 666, 670 (1997); *see O'Melveny*, 512 U.S. at 87-88.    And, where the federal Government is not a party, the burden to make such a showing is even greater. *See O'Melveny*, 512 U.S. at 88.

Here, Defendants ignore the fact that Defendants breached their obligation to KGP; that the Defendants owed a direct duty to KGP; and that the liability of Defendants is not in any way dependent on any action or inaction of the Government or any Federal Government policy, law or regulation. Defendants further ignore the fact that if, as pled in the Complaint,  Defendants are found liable to KGP, the Defendants may or may not have a separate cause of action against the Government. And, to the extent that the Defendants do have such cause of action, this court would not have jurisdiction of such action. Any such action of Defendants would have to be asserted by Defendants under the Contracts Disputes Act at the U.S. Court of Federal Claims. See 28 U.S.C. § 1491.Essentially, the Defendants are claiming that there is Federal Question jurisdiction here when there are no important Federal interests involved, when there is no conflict between state and Federal law, and when even if there were a contract dispute between the Defendants and the Federal Government, this court would not have jurisdiction of that dispute.[4]

---

[4] That the Defendants might have a cause of action against the Government does not require the presence of the Government in this action. KGP's claim is premised on the Defendants' duties owed to

KGP is not suing the Federal Government, and the Government's contract with KGP provides that the Defendants, and not the Government, will be liable to KGP.  *See* KGP Contract with DRMS (Contract No. SP-4410-R-1005) at page 20 of 68 ("the financial advisor fee shall be paid by the [Defendants] and not by [the Government under] this contract").   Defendants have offered no specific showing that federal interests would conflict with the law of the District of Columbia – in fact, federal and District of Columbia law follow the same legal principles. Thus, there is no basis for the assertion of federal jurisdiction.[5]

## B. FEDERAL OFFICER JURSIDICTION

This case involves the breach of a contractual obligation owed by the Defendants to KGP, and does not implicate any actions that the Defendants took at the direction of any federal officer.  Section 1442(a) provides that an action filed in state court against "[t]he United States . . . (or any person acting under that officer)" may be removed to federal court to the extent that the person is sued "in an official or individual capacity for any act under color of such office . . ."  28 U.S.C. § 1442(a).  Here, the Defendants argue that federal officer jurisdiction exists because they acted at the directive of a

KGP under the CV2 Contract irrespective of the rights and duties conferred by the CV2 Contract on the Defendants and the Government.

[5] The Ninth Circuit case cited by Defendants, *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1995)  does not support the exercise of federal question jurisdiction.  That case found federal question jurisdiction implicated in a private party dispute regarding a subcontract to provide toilet seats for use in a bomber.  Other circuits have questioned the validity of this holding because it fails to draw any meaningful distinction between the contract for a bomber and a subcontract for the provision of the toilet seat for the bomber – the latter does not implicate a matter of significant federal interest. *Woodward Governor Co. v. Curtiss Wright Flight Systems, Inc.*, 164 F.3d 123, 128 (2d Cir. 1999) (citing *Northrop Corp. v. AIL Sys. Inc.*, 959 F.2d 1424, 1427 (7th Cir.1992) (questioning wisdom of rule that would render all federal contracts subject to federal common law).  The 4th Circuit's holding in *Secretary of State for Defence v. Trimble Navigation Ltd*, 484 F.3d 700 (4th Cir. 2007) also is unavailing because it held that federal common law warranted the dismissal of a foreign government's 3rd party beneficiary claim on a government contract because  granting "[a] foreign purchaser such extraordinary third-party beneficiary rights is contrary to the structure and intent of the Foreign Military Sales program."  *Id.* at 702.

federal officer when they ceased to pay KGP, that they possess a colorable federal defense to KGP's claim, and that there is a causal nexus between the officer's direction and KGP's claim.  *See* Notice of Removal at 12 (citing *Isaacson v. Dow Chem. Co.*, __ F.3d __, 2008 WL 466111 (2d Cir. 2008). Defendants go on to argue this action justifies the exercise of federal jurisdiction.  Their argument, however, ignores several crucial points.  First, they voluntarily agreed and signed a modification to their contract with the Government in derogation of their independent duty to compensate KGP. Moreover, they do not possess a colorable defense under federal law. Second, as more fully stated *supra*, the government contractor defense is unavailing in this case because the Defendants cannot rely upon the defense when the federal government has, as here, waived its sovereign immunity.  Third, even if it could be argued that the Defendants were directed to adopt Modification No. 9, that does not mean that their obligation to KGP ended; hence, their voluntary decision to cease payments to KGP has no causal nexus to the purported directive of a federal officer.

### C. DIVERSITY JURSIDICTION

Finally, the Defendants suggest that federal diversity jurisdiction exists in this case.  KGP, as a general partnership, is a citizen of any jurisdiction in which its partners reside.  In KGP's case, its partners reside in the District of Columbia; therefore, KGP states that, for purposes of diversity consideration, it is deemed a citizen of the District of Columbia.  To invoke diversity jurisdiction, diversity of citizenship between the parties must also exist. 28 U.S.C. § 1332(a)(1). Diversity must be complete; no plaintiff may be a citizen of the same jurisdiction as any defendant. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).  For the purposes of determining the

availability of diversity jurisdiction as applied to corporations, corporations are considered resident in the state in which they are organized and/or where the corporation maintains its principal place of business. 28 U.S.C. § 1332.  The rule of corporate citizenship, however, does not extend to an LLC. *See*, *e.g.*, *Hoffman v. Fairfax County Redevelopment & Hous. Auth.*, 276 F.Supp.2d 14, 17 (D.D.C.2003) (treating an LLC as a partnership that does "not enjoy corporate citizenship for purposes of diversity"); and *Johnson-Brown*, 257 F.Supp.2d 175, 178 (D.D.C.2003) (declining to apply the corporate-citizenship rule to an LLC).

Here, both SAV and GL are limited liability companies organized under the laws of the State of Delaware.  As alleged in the Complaint and as conceded in the declaration of William Angrick, SAV is a wholly owned subsidiary of Liquidation Services, Inc. and GL is a wholly-owned subsidiary of SAV. *See* Complaint at ¶ 7; Angrick Declaration at ¶ 2. Mr. Angrick further states that he serves as the Chief Executive Officer of SAV and GL.  Angrick Declaration at ¶ 2. Although KGP lacks specific information concerning the specific identity of the members of the LLC entities known as SAV and GL, the Defendants have not averred their residency status; however, based on the Complaint and the Angrick Declaration, one or both of SAV and GL are deemed citizens of the District of Columbia insofar as LSI is a member of one or both LLCs. Cf. Angrick Declaration at ¶ 2. And, in its annual Form 10-K filed by it with the Securities and Exchange Commission, LSI has declared that the District of Columbia is its principal place of business. *See* Exhibit 1, excerpt from SEC filing dated December 7, 2007. Thus, by maintaining its principal place of business in the District of Columbia, LSI is deemed both a citizen and resident of the District of Columbia. *See* 28

U.S.C. § 1332. LSI wholly owns and presumably is a member of either or both SAV and GL. Thus, diversity jurisdiction cannot exist because either or both of SAV and GL are deemed citizens of the District of Columbia insofar as LSI resides in the District of Columbia and is a member of SAV, GL or both.

Accordingly, SAV and GL cannot rely upon diversity to establish jurisdiction in this Court.

**WHEREFORE**, for the foregoing reasons, KGP respectfully requests that its Motion to Remand be granted.

Respectfully submitted,

**BROWN RUDNICK BERLACK ISRASELS LLP**

_____
Kenneth B. Weckstein
District of Columbia Bar No. 239301
kweckstein@brownrudnick.com
Howard A. Wolf-Rodda
District of Columbia Bar No. 449377
hwolf-rodda@brownrudnick.com
601 Thirteenth Street, N.W.
Suite 700
Washington, D.C. 20005
(202) 536-1700 (voice)
(202) 536-1701 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing Kormendi\Gardner's Memorandum in support of its Motion to Remand to be served electronically in accordance with the Court's electronic filing guidelines to:

Craig A. Holman, Esq.
Matthew D. Michael, Esq.
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004


_____
Howard A. Wolf-Rodda

# Exhibit 1

QuickLinks -- Click here to rapidly navigate through this document

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# FORM 10-K

(Mark One)

☒   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.**

For the fiscal year ended September 30, 2007

OR

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.**

For the transition period from                    to

Commission file number 0-51813

# LIQUIDITY SERVICES, INC.
### (Exact Name of Registrant as Specified in Its Charter)

| | |
|---|---|
| **Delaware** | **52-2209244** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **1920 L Street, N.W., 6th Floor, Washington, D.C.** | **20036** |
| (Address of Principal Executive Offices) | (Zip Code) |

**(202) 467-6868**
(Registrant's Telephone Number, Including Area Code)

Securities Registered pursuant to Section 12(b) of the Act:
**None**

Securities Registered pursuant to Section 12(g) of the Act:
Common Stock, par value $.001 per share

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☐ No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act.   Yes ☐ No ☒

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§229.405 of this chapter) is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check One):

Large accelerated filer ☐          Accelerated filer ☒          Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐ No ☒

Aggregate market value of voting and non-voting common equity held by non-affiliates of the registrant as of March 30, 2007 based upon the closing price of the common stock as reported by The NASDAQ Stock Market on such date, was approximately $251,471,000.

The number of shares outstanding of the issuer's common stock, par value $.001 per share, as of December 7, 2007 was 27,947,198.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KORMENDI\GARDNER PARTNERS,<br><br>               Plaintiff,<br><br>    *v.*<br><br>SURPLUS ACQUISITION VENTURE, LLC<br><br>and<br><br>GOVERNMENT LIQUIDATION.COM, LLC<br><br>               Defendants. | Case No.: 1:08-cv-00423-HHK |

## <u>ORDER</u>

       The Court upon consideration of the Motion to Remand filed by Plaintiff Kormendi\Gardner Partners and having considered all memoranda of law and oral argument in support and opposition to the Motion, it is hereby:

       ORDERED, that the motion is GRANTED; and it is further

       ORDERED, that the action shall immediately be remanded to the Superior Court of the District of Columbia pursuant to 28 U.S.C. 1447.

Dated: _____, 2008    _____
                                      United States District Judge