UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KORMENDI\GARDNER PARTNERS,<br><br>    Plaintiff,<br><br> v.<br><br>SURPLUS ACQUISITION VENTURE, LLC<br><br>and<br><br>GOVERNMENT LIQUIDATION.COM, LLC<br><br>    Defendants. | Case No.: 1:08-cv-00423-HHK |

**KORMENDI\GARDNER'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

    Plaintiff, Kormendi\Gardner Partners ("KGP"), through counsel submits this Memorandum in Support of its Opposition to the Motion to Dismiss filed by Surplus Acquisition Venture, LLC ("SAV") and  Government Liquidation.Com, LLC ("GL") (collectively "SAV/GL" or "Defendants").  KGP's complaint states a claim upon which relief may be granted, and KGP did not fail to join an *indispensable* party.  Accordingly, the defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6), 12(b)(7), and/or 19(b) should be denied.  The Defendants owe money to KGP, and the presence of the United States Government as a party is not required to afford complete relief in this action. Under the contract that is subject of the dispute, the Defendants are liable to Plaintiff regardless of anything that the United States might say.

## **BACKGROUND: THE FACTS**

Although KGP's complaint describes a complex transaction, the core allegations are quite simple: SAV/GL agreed to pay money to KGP to compensate KGP for financial advisory services that resulted in contracts with the Defense Reutilization and Marketing Service ("DRMS").[1] Complaint ¶ 22. These contracts enabled Defendants to earn profits by purchasing and reselling military surplus and scrap material that DRMS identified for resale to the general public. Complaint ¶ 21 These purchase and resale transactions were formulated by KGP and established a unique and somewhat complex process to facilitate the disposition of this material. *See generally* Complaint ¶¶ 22-51 & ¶¶ 52-60 (respectively describing surplus and scrap resale programs). Under this process, Defendants, through GL, purchased Government designated material from DRMS at a fraction of its resale value. Having "purchased" the material, GL undertook the effort to market and resell it to the public. GL then, after deducting the costs of its resale efforts, distributed the proceeds according to contractually prescribed percentages to DRMS, SAV and KGP.[2] *See* Complaint ¶¶ 38-46.

Defendants have collected substantial revenues as a result of these transactions. Complaint ¶ 21. Under the transactional framework agreed to by DRMS and Defendants, SAV/GL agreed that they would pay money to KGP as compensation for financial advisory services that KGP provided to establish the very program from which

---

[1] DRMS is an agency within the United States Department of Defense ("DoD"), which, among other activities, arranges for the disposition of surplus and scrap material by DoD and its constituents.

[2] The contracts in this case implemented programs (1) to sell surplus property designated by DRMS (known as the "Commercial Venture" or "CV") and (2) to sell scrap material (known as the "Scrap Venture" or "SV"). This action alleges breached duties owed under the contract that implemented the Commercial Venture. As the contract in this case was the second incarnation of the CV program, it is designated as the "CV2 Contract." *See* Complaint ¶¶ 25-34 and 36-37 (describing history of CV contracts).

Defendants were profiting. Complaint ¶ 34. Defendants' obligations to KGP are unambiguously stated throughout their contract with DRMS – most notably in Articles 5 and 16 (respectively establishing the payment terms required of Defendants); *see also* CV2 Contract, Article 8 §§ 5 & 5(C) – (F) & Article 22, § 2 (respectively establishing duties to submit reports accounting for transactions to KGP and to provide notices to KGP).

Defendants knew this, they agreed to it, and they performed accordingly – until August 15, 2006, when they stopped, according to Defendants, pursuant to Modification No. 9. *See* Complaint ¶¶ 62, 64-66; *see also* Defendants' Memorandum at 14-15. Notably, the CV2 Contract did not purport to give any party the express ***right*** to terminate payments to KGP – in fact, the CV2 Contract was silent on this issue. The CV2 Contract simply stated that it could not be modified except in writing signed by the party against whom the modification would be enforced. CV2 Contract at Article 22, § 10 (attached to Defendants' Memorandum as Exhibit B, *see* page 21 of 22). By agreeing to cease payments to KGP in accordance with Modification No. 9, Defendants violated their obligation to pay KGP under the CV2 contract. This is so because Defendants were on notice that they could not eliminate the payments to KGP. Long before the execution of Modification No. 9, KGP notified Defendants that it expected to be paid in accordance with the terms of the CV2 Contract and that it would not consent to any modification of the Defendants' duty to pay. Complaint, ¶¶ 100 – 101 (citing letter dated September 25, 2003). And, KGP had no other entitlement to compensation because KGP's contract with DRMS stated that KGP would not be paid by DRMS but instead would be paid by the Defendants. S*ee* Complaint ¶¶ 18-19.

**ARGUMENT**

Kormendi/Gardner Partners ("KGP") is owed money. It is owed money by the Defendants, which agreed to pay KGP. Whether the United States Government might be liable to Defendants for payments owed by Defendants to KGP is not relevant to whether Defendants are liable to KGP. That is because SAV and GL expressly, knowingly, and unequivocally agreed to pay KGP. Defendants' argument and tortuous interpretation of the CV2 Contract does not change this simple fact. Accordingly, SAV and GL rightfully must face this lawsuit and they face a claim upon which relief may be granted.

**I.     STANDARD OF REVIEW**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *See Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1965 (2007). The complaint "is construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir.2002); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C.Cir.2000).

The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n. 6 (D.C.Cir.1993). Factual allegations in briefs or memoranda of law

may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C.Cir.1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

II. **KGP HAS STANDING TO BRING ITS SUIT AGAINST SAV AND GL AND THE ACTION STATES CLAIMS UPON WHICH RELIEF MAY BE GRANTED.**

    A. **KGP IS A VALID THIRD PARTY BENEFICIARY OF THE DEFENDANTS' CONTRACT WITH THE GOVERNMENT BECAUSE THE CV2 CONTRACT EXPRESSLY OBLIGATES DEFENDANTS TO PAY KGP AS A NAMED BENEFICIARY AND THAT OBLIGATION HAS NOT BEEN TERMINATED.**

Defendants and DRMS agreed that Defendants would compensate KGP for its effort to develop the transaction structure by which Defendants earned substantial profits. Complaint ¶ 22. The CV2 Contract expressly and unambiguously documented this obligation. There can be no doubt that KGP was an expressly intended third party beneficiary. And an express third party beneficiary has standing to sue the parties that owe it money.

District of Columbia law recognizes the right of a third party to enforce a contractual obligation when the third party is an intended beneficiary of the contract in question. *Aetna Cas. & Sur. Co. v. Kemp Smith Co.*, 208 A.2d 737, 739 (1965) (sub-subcontractor entitled to recover payment from contractor pursuant to its obligation to pay defaulting intermediate subcontractor for services provided by sub-subcontractor); *see also W. Union Tel. Co. v. Massman Constr. Co.*, 402 A.2d 1275, 1277 (D.C.1979) (telegraph company not expressly named as a beneficiary under agreement between

- 5 -

transit authority and construction contractor entitled to sue contractor where indemnification provision states that contractor would pay for damages to utilities); *Moran v. Audette*, 217 A.2d 653, 654 (D.C.1966) (both cited in *Monument Realty LLC v. Washington Metropolitan Area Transit Authority*, --- F.Supp.2d ----, 2008 WL 510333 D.D.C.,2008). When a "plaintiff [has] alleged facts to support an inference" that a party was "an intended third-party beneficiary of [an] agreement [it has] adequately stated a breach of contract claim." *Monument Realty*, -- F.Supp. 2d --, 2008 WL 510333.

Accordingly, under District of Columbia law, a plaintiff may sue as a third party beneficiary so long as facts are alleged from which the Court can infer that the plaintiff was intended to be a third party beneficiary. *All* of the District of Columbia cases above found that a plaintiff could sue as a third party beneficiary when the plaintiff was not named as such within the four corners of the contract. KGP's case here is much stronger. Here, the contract names KGP as the recipient of payments owed under the contract. The contract expressly names KGP as a third party beneficiary.

Defendants argue that KGP is not a third party beneficiary because the contract says that KGP is not a party to the contract. Plaintiff's Memorandum at 11-12. That a plaintiff is not a party to a contract is the essence of the third party status. Were KGP a party to the contract, it would be suing as a party – not as a third party beneficiary. That the contract expressly states that KGP is not a party has absolutely no bearing on KGP's status as a third party beneficiary. And, as a factual matter, Defendants acknowledged KGP's third party beneficiary status every time they paid KGP. See Complaint ¶ 63 (stating that Defendants paid KGP in accordance with terms of contract

for over 5 years).  It would defy logic and good sense to pay great sums of money to a party to which no obligation is owed.

To the extent that Defendants contend that the contract explicitly cuts KGP off as a third party beneficiary, the sole provision of the contract (Article I, § 8(B)) cited by the Defendants merely expresses the parties' understanding that KGP should not be considered an agent of DRMS; hence, any communications given to KGP "shall not be deemed received by DRMS."  On its face, the provision says nothing that would deprive KGP of its status as an intended beneficiary of the CV2 Contract. *See* CV2 Contract at Article I, § 8(B) (*see* Defendants' Exhibit B at 12 of 22).  Indeed, in each of the District of Columbia cases cited above,, the plaintiff was neither a party nor even named as a beneficiary in any of the contracts at issue.  Yet, the courts determined that the plaintiffs could sue and recover as intended third party beneficiaries.  In this case, KGP is an expressly identified third party beneficiary to which Defendants are obligated.

Finally, Defendants argue that their obligation to pay KGP ended when DRMS issued, and Defendants accepted, Modification No. 9 to the CV2 Contract.  Defendants' Memorandum at 14-15. Under general principles of third-party beneficiary law, **before the beneficiary's rights vest**, the parties to the contract may rescind or modify the contract without the approval of the third party. *See* E.A. Farnsworth, Contracts § 10.8 (2d ed. 1990). After the contract is accepted, adopted or acted upon by a third-party beneficiary, however, the beneficiary's rights become vested. *Id.* It is true that the Restatement (Second) of Contracts § 311 provides that, in certain circumstances, the promisor and promisee retain the power to discharge or modify the agreement by subsequent agreement. *See Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d

819, 822 (9th Cir.1985); *Price v. Pierce*, 823 F.2d 1114, 1122 (7th Cir.1987), *cert. denied*, 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 422 (1988). However, any power to modify or rescind terminates when the "beneficiary materially changes position in justifiable reliance on the promise before receiving notice of the modification." See *Karo*, 762 F.2d at 822; Restatement (Second) of Contracts § 311(3) (1981). This is because a rescission or modification after a change in position by a third-party beneficiary deprives that third-party of its expectations under the contract.

In this case, KGP notified Defendants and DRMS of its reliance upon and intention to enforce its rights as a third party beneficiary long before the parties executed Modification No. 9. Complaint ¶¶ 100-101. Given that KGP placed both parties on notice, thereby indicating its express assent to and reliance upon its right to receive payment, the modification is of no effect. Even the Government, which in most cases has the right for instance, to terminate a contract at any time for the convenience of the Government, cannot rescind an obligation to which a third party has expressed its assent. *See National Sur. Co. v. United States*, 31 Fed. Cl. 565, 579 (1994). To permit the modification to have effect under the circumstances in this case would deprive KGP of its rights and be manifestly unjust, particularly where KGP has relied upon its rights under the contract.[3]

KGP is an intended third party beneficiary that has standing to sue and has stated a claim against the Defendants upon which relief may be granted.

---

[3] Defendants argue that the right to cease payments was reserved in the CV2 Contract by Article 5, section 2(d). This greatly exaggerates the nature of § 2(d). Section 2(d) simply provides payment instructions indicating how and to where payments should be delivered. *See* CV2 Contract, Art.5 § 2(d).

**B.   KGP IS ENTITLED IN QUANTUM MERUIT TO RECOVER THE DAMAGES SOUGHT IN THIS ACTION.**

KGP is entitled to pursue its claim and recover upon a theory of unjust enrichment or quantum meruit. KGP has alleged that it provided valuable services that resulted in the program under which Defendants have earned substantial profits. The Defendants therefore have enjoyed substantial benefits from the services of KGP. Moreover, Defendants knew of those services, accepted the benefit of KGP's efforts and were fully aware that KGP expected to be paid for its services.  In addition, Defendants have retained substantial profits and have failed to compensate KGP under circumstances when "in justice and equity" KGP is entitled to be paid for its efforts.  *See* Complaint ¶¶ 106-13.

An action in quantum meruit is an action on a contract implied in fact, and consists of four elements: "1) valuable services rendered by the plaintiff; 2) for the person from whom recovery is sought; 3) which services were accepted and enjoyed by that person; and 4) under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid." *United States ex rel. Modern Electric, Inc. v. Ideal Electronic Security Co.*, 81 F.3d 240, 246-47 (D.C.Cir.1996) (quoting Providence Hospital v. Dorsey, 634 A.2d 1216, 1219 n. 8 (D.C.1993).

An unjust enrichment action, on the other hand, involves a quasi-contract, a contract implied in law. "Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another." *4934, Inc. v. District of Columbia Dep't of Employment Servs.*, 605 A.2d 50, 55 (D.C.1992). The elements are similar to those for quantum meruit, and establish that a plaintiff may recover in unjust

enrichment "even though no intention of the parties to bind themselves contractually can be discerned." *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C.Cir.1973). A plaintiff may prevail on an unjust enrichment claim if it establishes that "(1) [it] had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment." *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 495 (D.C.Cir.1998) (internal quotations omitted).[4]

Here, Defendants entered into their contract with DRMS fully cognizant of the fact that KGP had provided valuable services that led to the program that Defendants were undertaking. See Complaint ¶ 110; see also CV2 Contract at Articles 5 and 16. Their contract with DRMS stated that they were expected to pay KGP for its services. *Cf. id.*. Moreover, DRMS, in its contract with KGP, expressly provided that Defendants, not DRMS, were to pay KGP for their services. See KGP Contract with DRMS (Contract No. SP-4410-R-1005) at page 20 of 68 (attached hereto as Exhibit 1); *see also* Complaint ¶¶ 18-19. KGP's allegations to this effect are in no way "conclusory." They are, in fact, set forth in Defendants' contract with DRMS. And, these allegations do not merely state KGP's expectation of payment – the allegations, in fact, state that Defendants not only reasonably should have expected to compensate KGP – Defendants expressly were aware of this.

Finally, Defendants argue that they did not receive the benefit of the compensation because they, instead, paid DRMS. That point is irrelevant. Defendants

---

[4] Defendants also urge this court to dismiss Plaintiff's quantum meruit claim because a party cannot recover under that theory when its rights are set forth in a contract. Where, as here, the Defendants deny the vitality of KGP's status as a third party, a claim sounding in quantum meruit or unjust enrichment appropriately is pled in the alternative.

reasonably and actually understood that they were to pay KGP for its services. They failed to honor that legal and equitable duty. The mere fact that they ceded the proceeds to DRMS or any other person or entity is unfortunate for Defendants, but in no way eviscerates Defendants' legal and equitable duty to KGP.

### C. DEFENDANTS CANNOT HIDE BEHIND THE THREADBARE CLOAK OF THEIR STATUS AS GOVERNMENT CONTRACTORS.

Defendants argue that the government contractor defense enunciated in the Supreme Court's opinion in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) insulates it from liability for KGP's contractually based claims. The government contractor defense operates to preempt state law where (1) the field of activity involves a uniquely federal interest; and (2) a significant conflict exists between an identifiable federal policy or interest and the operation of state law, or the application of state law would frustrate specific objectives of federal legislation. *Boyle*, 487 U.S. at 507.

The Court's analysis in *Boyle* of whether applicable federal and state laws resulted in a significant conflict relied on the discretionary function exception of the Federal Tort Claims Act ("FTCA"). The FTCA authorizes damage suits against the United States for harm caused by the negligent or wrongful conduct of government employees, to the extent that a private person would be liable under state law. 28 U.S.C.A. § 3-146(b) (1993). The FTCA, however, expressly retained the government's immunity from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." 28 U.S.C.A. § 2680(a) (1994).

Accordingly, courts repeatedly have held that liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Id.* at 512; *see also* W. Noel Keyes, GOVERNMENT CONTRACTS UNDER THE FEDERAL ACQUISITION REGULATION 3D ED., § 28.22 (Supp. 2007) (collecting cases applying government contractor defense).

Defendants, without considering the underlying premise of *Boyle,* erroneously assert they are insulated from liability because the Government made them stop paying KGP. The underlying premise of *Boyle* is that, pursuant to the FTCA, contractors performing the will of the Government should not be liable for tort damages insofar as the contractor is performing a discretionary function of the Government for which the Government itself would not be liable because such functions fall within the scope of retained sovereign immunity. The obvious corollary to that point is that, if the Government is *not* cloaked by its sovereign immunity, neither is the contractor, regardless of what the contractor is doing.

Armed with a proper understanding of *Boyle's* holding, the flaw in Defendants' argument is apparent. The Government has waived its sovereign immunity for claims arising under Government contracts. *See, e.g.,* Tucker Act, 28 U.S.C. §§ 1346(a) & 1491; Contract Disputes Act of 1978, 41 U.S.C. §§ 601, et seq. Given the Government's waiver of immunity, Defendants have nothing to hide behind. The unreported decision in *Askir v. Brown & Root Services Corp*, No. 95-Civ-11008(JGK),

1997 WL 598587 (S.D.N.Y., Sept. 23, 1997) is not contrary. In that case, the court held that a contractor would not be held liable for damages arising out of its trespass onto lands in Somalia during operations it was performing in theater. *See id.* The Court simply reached the unremarkable conclusion that a contractor performing a function for which the Government itself would not be liable insulates the Contractor as if it were the Government.

Accordingly, Defendants are not immune for their failure to honor their contractual obligations to KGP. They cannot invoke the Government's sovereign immunity where none exists.

### III. THE UNITED STATES GOVERNMENT IS NOT AN INDISPENSABLE PARTY IN THIS ACTION AND THE GOVERNMENT'S UNAVAILABILITY IS IMMATERIAL.

Finally, Defendants urge the dismissal of this action on the grounds that KGP had failed to join an indispensable party, the Government, and that joinder of the Government is not feasible. This argument is without merit. KGP's claim is an action to collect unpaid compensation that is owed by the Defendants. If the Defendants contend that they are not liable to KGP because it is the Government's obligation, they surely can assert (and have asserted) that defense. If the Defendants' position is that to the extent they are liable to KGP, the government is liable to Defendants, that is an argument between Defendants and the Government. That does not concern KGP, and should not concern this Court. Moreover, even if the Government were jointly liable along with the Defendants to KGP, that would not make the Government an indispensable party. A joint obligor is not customarily an indispensable party to an action insofar as contractual liability ordinarily is joint and several. 7 Charles A. Wright

& Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Civ. 3d § 1613 (1986 & supp. 2008) (and cases cited therein) ("Federal Prac. & Proc.").[5] To hold otherwise would mean that a contract action never could be brought against a party that breached the contract if the breaching party had a separate right to indemnification against a third party—unless the plaintiff also filed suit against the third party. That is not the law.

Whether an action should be dismissed for failure to join an indispensable party involves a three-step process. *Iron Workers Local Union No. 17 Ins. Fund and its Trustees v. Philip Morris Inc.*, 182 F.R.D. 512, 516 (N.D.Ohio 1998). The court must first determine whether the absent party is "necessary." If the party is, in fact, a "person to be joined if feasible" as defined by the first section of Rule19(a), the court must then consider the implications of joinder - *e.g.,* whether diversity jurisdiction will be destroyed if the party is joined - under the second section of Rule 19(a). *Id.* If joinder is not feasible, the court must then decide whether that party is "indispensable" such that it would not be fair for the litigation to go forward in its absence. Fed.R.Civ.P. 19(b). Analysis under Rule 19 should not be formalistic, but rather should focus on pragmatic considerations and the factual and procedural posture of the individual case. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 116 n. 12, 117, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

---

[5] Defendants' reliance upon the cases cited in footnote 12 of their Memorandum is misplaced to the extent those cases concern the joinder of *obligees* not *co-obligors*. Obligees are indispensable to avoid exposing the Defendant to multiple claims on the same contract. Here there is only one claim against Defendants. Any other action involving DRMS is an independent claim of Defendants against the Government and, to the extent the Defendants might argue that the Government is a co-obligor to KGP, the Government is not an indispensable party. *Cf.* Fed.Prac. & Proc. § 1613.

Where contract rights are involved and where third party beneficiaries are parties, courts have rejected the argument that all of the original parties to the contract must be joined. *Central States Southeast and Southwest Areas Pension Fund v. Kraftco*, 527 F.Supp. 420, 421 (M.D.Tenn.1981).  See also Sandobal v. Armour & Co., 429 F.2d 249 (8th Cir.1970); Wright, Miller and Kane, Federal Practice and Procedure, § 1613 at 186 (1986); *Quasar Co. v. Atchison, Topeka and Santa Fe R. Co.,* No. 83 C 4617, slip. op. at 4, 1984 WL 2758 (N.D.Ill. Feb. 17, 1984).  Moreover, where the parties' defenses and counterclaims will not be affected by the failure to join an absent party, the absent party is not indispensable.  *Mayer v. Development Corp. of America*, 396 F. Supp. 917, 922-23 (D. Del. 1975).

In this case, KGP's recovery is not in any way dependent on whether the Government might be liable to the Defendants for any breaches of the Defendants' duties to KGP. The Government is not indispensable to this action because the Court can afford complete relief to KGP and the Defendants can assert all appropriate defenses without the presence of the Government. Moreover, the Government's rights and liabilities could be litigated in a separate action, and , a finding that the Government is an indispensable party would deprive KGP of a forum to pursue its action against the Defendants.  This is because the Government can only be sued on its contractual obligations in the Court of Federal Claims.  That forum, however, does not permit the adjudication of disputes between private litigants. Thus, KGP would be precluded from pursuing its claim against these Defendants in any forum.

For these reasons, Defendants' motion to dismiss premised on the failure to join the Government in this action should be denied.

**WHEREFORE**, KGP respectfully requests that Defendants' motion to dismiss be denied.

Respectfully submitted,

**BROWN RUDNICK BERLACK ISRASELS** LLP

_____
Kenneth B. Weckstein
District of Columbia Bar No. 239301
kweckstein@brownrudnick.com
Howard A. Wolf-Rodda
District of Columbia Bar No. 449377
hwolf-rodda@brownrudnick.com
601 Thirteenth Street, N.W.
Suite 700
Washington, D.C. 20005
(202) 536-1700 (voice)
(202) 536-1701 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Kormendi\Gardner's Opposition to Defendants' Motion to Dismiss to be served electronically in accordance with the Court's electronic filing guidelines to:

Craig A. Holman, Esq.
Matthew D. Michael, Esq.
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004

_____
Howard A. Wolf-Rodda

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KORMENDI\GARDNER PARTNERS,<br><br>            Plaintiff,<br><br>  v.<br><br>SURPLUS ACQUISITION VENTURE, LLC<br><br>and<br><br>GOVERNMENT LIQUIDATION.COM, LLC<br><br>            Defendants. | Case No.: 1:08-cv-00423-HHK |

## **ORDER**

The Court upon consideration of the Motion to Dismiss filed by Defendants Surplus Acquisition Venture, LLC & Government Liquidation.com and having considered all memoranda of law and oral argument in support and opposition to the Motion, it is hereby:

ORDERED, that the motion is DENIED.

Dated: _____, 2008    _____
                                                             United States District Judge