**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
KORMENDI/GARDNER PARTNERS,                           )
                                                    )
                      Plaintiff,                    )
                                                    )
              v.                                    )  Case No.  1:08-cv-00423-HHK
                                                    )
SURPLUS ACQUISITION VENTURE, LLC and                )
GOVERNMENT LIQUIDATION.COM, LLC,                     )
                                                    )
                      Defendants.                   )
_____             )

**DEFENDANTS' OPPOSITION TO**
**KORMENDI/GARDNER PARTNERS' MOTION TO REMAND**

Defendants Surplus Acquisition Venture, LLC ("SAV") and Government Liquidation.com, LLC ("GL") (together, "Defendants"), by this filing and for the reasons set forth in the Notice of Removal of Civil Action by Surplus Acquisition Venture, LLC and Government Liquidation.com, LLC ("Notice of Removal" or "NOR") filed in this Court on March 10, 2008 (Docket Entry 1) and incorporated by reference, hereby oppose the Motion to Remand ("Motion to Remand" or "Pl. Mot."; Docket Entry 9[1]) filed by Plaintiff Kormendi/Gardner Partners ("Plaintiff" or "KGP").

As set forth below, no meaningful argument exists that state law, as opposed to federal common law, governs Plaintiff's claim that it is a third-party beneficiary of a contract ("CV2 Contract") between Defendants and the United States Department of Defense, Defense

---

[1]  Plaintiff's motion to remand was originally filed as Docket Entry 8, but a corrected motion was subsequently filed minutes later as Docket Entry 9.  _See_ Docket Entry 10 (delineating that Docket Entry 9 represented the corrected filing).  Accordingly, for purposes of this motion, Defendants have reviewed and considered only the corrected motion, Docket Entry 9.

Reutilization and Management Service ("DRMS"). Defendants have set forth multiple bases under which removal to this Court is proper on the basis of federal question jurisdiction.

*First*, for purposes of this Court's jurisdiction, a claim "aris[es] under the laws of the United States" if the disposition of any issues stated in the Complaint require the application of federal common law, *see Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972), and the CV2 Contract is patently governed by the federal common law. To borrow from the United States Court of Appeals for the Fourth Circuit, which recently examined a third-party beneficiary claim in the government contracting context, "civil liabilities arising out of the performance by a private contractor of federal procurement contracts are governed by federal common law." *Sec'y of Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705-06 (4th Cir. 2007); *see also Roedler v. Dep't of Energy*, 255 F.3d 1347, 1351-52 (Fed. Cir. 2001) ("applying the federal common law that governs the contracts of the United States"). And if judicial precedent applying the federal common law to suits concerning federal contracts is not enough, the CV2 Contract itself speaks directly to the governing law: "Where a dispute arising under a contract requires consideration of the law, the rights and obligations of the parties will be determined *by the law of the United States of America*." CV2 Contract, Attachment V, Part 1 (p. 1)[2] (emphasis added). Because federal common law applies to the CV2 Contract, this Court is vested with federal question jurisdiction and removal to this Court is proper.

---

[2]  Defendants attached to the Notice of Removal: excerpts of the CV2 Contract as Exhibit C; Modification No. 9 as Exhibit D; and Modification No. 11 as Exhibit E. Defendants attached the complete CV2 Contract, as amended, including the base contract document, various schedules and attachments related thereto, and the subsequent modifications as Exhibit A to the Reply Brief in Support of Defendants' Motion to Dismiss (Docket Entry 12, filed Apr. 7, 2008). Defendants expressly incorporate herein by reference all pages of the Exhibit A to the Reply Brief, and do not resubmit that document for the administrative convenience of the Court (the documents is several hundred pages long).

To the extent that the Court need ever turn to the issue of whether to displace state law here (because federal law governs *ab initio*), the saliency of federal interests displaces state law in favor of federal law and vests this Court with subject matter jurisdiction. Just as the Supreme Court found in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), public policy would vest this Court with jurisdiction and displace state law even if it applied (which it does not) inasmuch as important federal interests are directly implicated in the CV2 Contract and the actions taken by Defendants pursuant to that agreement. Accordingly, removal on the basis of federal question jurisdiction alternatively would be appropriate even if the Court felt compelled to assess whether important federal interests were sufficient to displace state law.

*Second*, Defendants' invocation of Federal Officer Removal pursuant to § 1442 is proper and serves as an equally valid basis for this Court's subject matter jurisdiction. Meeting the liberal standard the Supreme Court applies to this basis for removal, Defendants' Notice of Removal and documents properly before this Court demonstrate that Defendants acted under federal officer direction, that Defendants possess colorable federal defenses, and that there is a causal nexus between the plaintiff's claims and the direction. Plaintiff's Motion to Remand fails to controvert Defendants' argument and does not cite any legal authority to undermine Defendants' invocation of Federal Officer Removal.

*Third*, although not formerly asserted as a basis for removal in the Notice of Removal, Defendants continue to preserve the ability to assert diversity jurisdiction as an alternate basis for removal should the facts so demonstrate. There remains no factual record on which Defendants, or this Court, can assess the citizenship of Plaintiff KGP.

## I.    PROCEDURAL HISTORY

In late-January 2008, Plaintiff filed a Complaint for Breach of Contract, Quantum Meruit and Accounting (the "Complaint") against Defendants in the Superior Court of the District of Columbia.  *See* Complaint, NOR Ex. A.  The Superior Court for the District of Columbia assigned the matter Civil Action No. 0000536-08.  *Id.*  Plaintiff did not serve the action on Defendants until February 19, 2008.  *Id.*; *see also* Declaration of William Angrick, dated March 10, 2008 ("Angrick Decl."), NOR Ex. B., at ¶ 4.

Plaintiff, by its breach of contract count, seeks to recover $1.5 million in purported damages from Defendants based on Plaintiff's alleged status as a third-party beneficiary to Commercial Venture Contact No. 99-0001-0002 (the "CV2 Contract"), a contract between Defendants and DRMS.  *See* Compl. at ¶ 1 ("KGP sues SAV and GL to enforce its rights as a third party beneficiary of a contract between the Defendants and the Defense Reutilization and Marketing Service.").  Plaintiff is *not* a party to the CV2 Contract under which Plaintiff claims third-party beneficiary status.  CV2 Contract at VI, Art. 1, § 8 (p. 38).  Instead, Plaintiff claims that its alleged standing as a third-party beneficiary under the CV2 Contract arises from a separate federal contract for consulting services solely between Plaintiff and DRMS (the "KGP-DRMS Contract"), *see* Compl. at ¶¶ 14-22 - a contract to which Defendants were not parties, have no interest in, and are not privy.[3]

Plaintiff, by its quantum meruit count, seeks $1.5 million in damages against Defendants for services Plaintiff allegedly provided to DRMS under the KGP-DRMS contract.  *See* Compl. at ¶¶ 105-113.

---

[3]  The Complaint does not explain why Plaintiff has not sued the party which ordered its services and with which Plaintiff apparently has a contractual disagreement - the United States.

Plaintiff, by its accounting count, seeks a court-ordered audit of the federal CV2 Contract between DRMS and Defendants. *See id.*

On March 10, 2008, Defendants timely removed the action to this Court, pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446. Pursuant to 28 U.S.C. § 1446, Defendants have removed the action to the District Court for the District where the state court action was pending and attached "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." *See* NOR ¶¶ 14-15. Defendants identified the Court's federal question subject matter jurisdiction as the basis for removal, and also reserved the right to assert that this Court is vested with diversity jurisdiction. *Id.* at ¶¶ 16-32.

On March 31, 2008, Plaintiff filed a Motion to Remand, erroneously asserting that state law governed the dispute here, which relates to a federal government contract awarded by the Department of Defense, concerning items relating to national security, and specifying that federal common law governs disputes relating thereto.

## II.    FACTUAL BACKGROUND

### A.    The CV2 Contract Generally

At its most basic level, the CV2 Contract under which Plaintiff claims third-party beneficiary status involves the sale of Department of Defense ("DOD") surplus personal property with United States Government assigned demilitarization codes of A, B, or Q. *See* CV2 Contract at II.B (pp. 2-3); *see also* Compl. at ¶ 23. DRMS's handling and sale of such property is governed by a series of federal statutes, federal regulations, and DoD surplus personal property disposition manuals, including: the Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 101 (2002), *et seq.*; the Federal Property Management Regulation, 41 C.F.R. Pt. 102; and the Defense Materiel Disposition Manual, DOD 4160.21-M (1997). *See* NOR ¶ 5.

DRMS's surplus property sales and the CV2 Contract are matters of national interest and national security. *See DOD Excess Property: Control Breakdowns Present Significant Security Risk and Continuing Waste and Inefficiency*, United States Government Accountability Office Report to Congress No. GAO-06-943 ("GAO Report") (2006), at precis-ii ("GAO's previous work found problems in security controls over sensitive excess military equipment that resulted in lost and stolen items, some of which were sold to the public. . . ."). Underscoring the national security interests at work in the CV2 Contract, DRMS justified the need for Modification No. 11 in part due to the "dynamic" and "evolving" nature of counter-terrorism policies. *See* Modification No. 11 at 2. DRMS thus requested, through Modification No. 11, that Defendants screen for "Controlled Property" - *i.e.*, "[a]ny property which DRMS determines is potentially not saleable due to its DEMIL Code, its end use, or should not be sold to the general public for any reason related to *national security* or other statutory obligations of the Federal Government." *Id.* at 4 (emphasis added).

### B.    Specific Provisions of the CV2 Contract

The CV2 Contract defines the parties to the contract as "DRMS, Contractor [SAV] and, pursuant to the provisions of Section 10 of this Article 1, Purchaser [GL]." CV2 Contract at VI. Art. I, § 8(B)(p. 38). The CV2 Contract notes that Plaintiff was the "DRMS Financial Advisor" and was "neither a party to the contract nor an agent of DRMS for any purpose." *Id.* The CV2 Contract also notes that "this contract is an agreement for the proceeds-sharing sale of the Property by DRMS as seller to Purchaser as buyer." *Id.* at 8(A)(p. 38).

With respect to disbursements, as originally issued the CV2 Contract directed Defendant GL to distribute a small portion (2.25 percent) of the purchase price due DRMS and a small portion of the DRMS share of the net proceeds to Plaintiff. These disbursements by Defendants

out of proceeds due DRMS apparently were the result of work Plaintiff performed for DRMS under the separate KGP-DRMS Contract, to which neither SAV nor GL was a party.[4]  CV2 Contract at VI. Art. XVI, § 1 & 2(p. 84-85); Compl. at ¶¶ 11-22.

From the time of formation, however, the CV2 Contract reserved to DRMS the unilateral right to change by the CV2 Contract's payment terms:  "Unless otherwise provided by notice, all payments to DRMS and to KGP shall be made and delivered pursuant to the following instructions, which instructions may be changed by written notice to Purchaser."  CV2 Contract at VI. Art. V, § 2(D)(p. 54).  The CV2 Contract also contemplated that the parties could change other terms of the CV2 Contract:  "No change or modification of, or waiver or compromise under, this contract shall be valid unless it is in writing and signed by a duly authorized representative of the party against which it is to be enforced."  *Id.* at VI. Art. XXII, § 10 (p. 98).  DRMS has issued eleven modifications to the CV2 Contract, none of which Plaintiff has signed.  Angrick Decl. at ¶ 17.

With respect to disputes, the CV2 Contract itself made clear that federal law is to govern controversies relating to the contract:

> 11.  LAW GOVERNING CONTRACT
>
> Where a dispute arising under a contract requires consideration of the law, the rights and obligations of the parties will be determined by the law of the United States of America.

---

[4]  Of some note, Plaintiff cites to the 1996 KGP-DRMS Contract and provides the following quotation using bracketed information to replace actual text:

> See KGP Contract with DRMS (Contract No. SP-4410-R-1005) at page 20 of 68 ("the financial advisor fee shall be paid by the [Defendants] and not by [the Government under] this contract.")

Pl. Mot. at 12.  Notwithstanding the fact that KPG has never entered the KGP-DRMS into the record of this case, Defendants question Plaintiff's motivation in replacing actual KGP-DRMS Contract language with the above reference to "Defendants" specifically.  The truth of the matter is that the 1996 KGP-DRMS Contract could not possibly have referenced either Defendant GL or Defendant SAV because they did not come on the scene of the CV Program until years later.

CV2 Contract at Attachment V, Part 1, ¶ 7 (p. 1).

     **C.    Plaintiff KGP's Allegations**

     KGP asserts that "it received what it was due under the CV2 Contract until the summer of 2006. At that time, Defendants stopping making payments to Plaintiff under the CV2 Contract." Compl. at ¶ 61. What the Complaint fails to mention, however, is that the payments to KGP ceased because DRMS - the only party with which Defendants had a contract, and the only party to whom Defendants owed a duty - so directed Defendants by CV2 Contract Modification No. 9. Effective with that valid contract modification, DRMS thereby removed whatever alleged interest Plaintiff claims in the CV2 Contract:

> NOW, therefore, it is mutually agreed between the parties hereto that, effective with Delivery Order 254, KGP will no longer be entitled to payment (upfront/resale) for property transferring to purchaser under contract 99-0001-0002. KGP will be entitled to proceeds sharing arrangement (resale) set forth in contract 99-0001-0002 for all property transferred to purchaser prior to delivery order 254. Effective with Delivery Order 254, the payment originally directed to KGP will be included in the proceed sharing arrangement to DRMS, thus making DRMS share equal to 80% rather than 78.2% after deducting KGP's portion.

*See* Modification No. 9 at 2. As result of Modification No. 9, the money that Plaintiff claims it is owed resides in the United States Treasury - not Defendants' coffers. *See id.*; Angrick Decl. at ¶ 16.

     Not content simply alleging an ability to trump DRMS's right to alter the payment terms of the CV2 Contract (a contract to which KGP is not a party and has no rights whatsoever), KGP also advances the position that DRMS could not modify the CV2 Contract in any way without KGP's consent, including through Modification No. 11 - which increased the level of screening of surplus defense property for national security reasons. *See* Compl. at ¶ 104; *see also id.* at ¶¶ 68-70 (stating that DRMS and SAV agreed to effect Modification No. 11, which required GL to

develop and implement new inventory inspection and assurance procedures to minimize the release of sensitive military property); *see also* Modification No. 11 at 2.

## III.  LEGAL ANALYSIS

### A.    The Court Has Federal Question Jurisdiction Over This Matter

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Defendants may remove this case pursuant to 28 U.S.C. § 1441 because this civil action raises federal law issues and involves matters of unique, significant federal interest.  The Court also has federal question jurisdiction under the Federal Officer Removal statute, 28 U.S.C. § 1442.

#### 1.    Federal Law Applies In The First Instance

As an initial matter, both judicial precedent and the CV2 Contract itself establish that the Court need not displace state law at all, as this matter arises under federal law.  The law is extensive, binding, and fatal to Plaintiff's motion on this point.

##### a.    Federal common law governs federal contracts

It is a fundamental principle that the rights and obligations of the parties to a federal contract are determined under federal common law.  *See, e.g., Long Island Savs. Bank, FSB v. United States*, 503 F.3d 1234, 1245 & 1249 (Fed. Cir. 2007) ("it is customary, where Congress has not adopted a different standard, to apply to the construction of government contracts the principles of general contract law, which become federal common law . . . we apply the principles of general contract law to the construction of government contracts") (quotations and citations omitted); *Roedler*, 255 F.3d at 1351 ("the federal common law [] governs the contracts of the United States"); *JGB Enters., Inc. v. United States*, 63 Fed. Cl. 319, 331 (Fed. Cl. 2004) ("[a]pplying the federal common law that governs the contracts of the United States"); *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 180 (D.D.C. 2007) (claims for rescission of

government contracts "arise under federal law as § 1331 requires, since the federal common law of contracts applies to contracts with the federal government, and federal common law is part of the 'laws of the ... United States' for the purpose of § 1331 jurisdiction") (quotation and citation omitted); *see also N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1484 (9th Cir. 1985) (finding that "impracticability claim also arises under federal law because federal common law of contracts applies to contracts with the federal government"). Since the CV2 Contract was awarded by the Department of Defense pursuant to federal contracting rules and regulations, this dispute is governed by the well established rule that federal contracts are governed by federal law and Plaintiff offers nothing by way of relevant authority suggesting otherwise. Accordingly, there is no need to even turn to the state law conflict analysis urged by KGP, for federal question jurisdiction exists as a threshold matter pursuant to 28 U.S.C. § 1331 and removal was proper pursuant to 28 U.S.C. § 1441.

> **b.     The CV2 Contract itself mandates application of federal common law.**

Beyond the depth of precedent supporting the principle that federal contracts are construed under the federal common law, the CV2 Contract itself - the very instrument under which Plaintiff purportedly claims third-party beneficiary status - expressly identifies and calls for the application of federal law. The CV2 Contract unmistakably provides:

> 11.  LAW GOVERNING CONTRACT

> Where a dispute arising under a contract requires consideration of the law, the rights and obligations of the parties will be determined by the law of the United States of America.

CV2 Contract at Attachment V, Part 1, ¶ 7 (p. 1).

It is well established that parties seeking to receive third-party benefits under a contract too must be bound by other provisions in that document. For example, in *Trans-Bay Engrs. &*

*Builders, Inc. v. Hills*, 551 F.2d 370 (D.C. Cir. 1976), the D.C. Circuit Court of Appeals considered whether a claimant could avoid the burdens of a contract that purportedly vested it with third-party rights. The *Hills* court succinctly ruled that the district court "properly stated that a creditor third party beneficiary was bound by the terms and conditions of the contract that it invoked. *The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract.*"  *Id.* at 378 (citation omitted) (emphasis added). Numerous other courts have implemented this rule as well. *See, e.g.*, *Cambridge Holdings Group, Inc. v. Fed. Ins. Co.*, 357 F. Supp. 2d 89, 95 (D.D.C. 2004) (citing *Hills* for the above italicized proposition, and stating "[e]ven if the plaintiff had plead the necessary elements to be considered a proper third-party beneficiary, it could only sue to enforce the provisions of the agreement); *Rotermund v. United States Steel Corp.*, 474 F.2d 1139, 1142 (8th Cir. 1973) ("one suing on a contract allegedly made for his benefit as a third-party beneficiary must accept the contract as it was made by the parties thereto; and he is in no better position than, and his rights are no greater than those of, the contracting party through whom he claims") (quotation and citation omitted); *Interpool Ltd., v. Through Transp. Mut. Ins. Ass'n*, 635 F. Supp. 1503, 1504-05 (S.D. Fla. 1985) (the law is clear that a "third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke"); CJS ON CONTRACTS, § 627 ("Before a third-party beneficiary can accept the benefits of a contract made for his or her benefit, such beneficiary must accept all of its implied, as well as express, obligations . . . A third-party beneficiary cannot accept the benefits of the contract while at the same time avoiding its limitations"); WILLISTON ON CONTRACTS, § 37:23 ("third party beneficiaries must take their contracts as they find them - the good with the bad."). As a result, purported third-parties have been bound to a host of contract provisions to which they may not have specifically assented in writing. *See, e.g., Amer. Patriot Ins. Agency*

*Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 864, 890 (7th Cir. 2004) (plaintiff bound by contract's choice of law and arbitration clauses with respect to third-party beneficiary claim); *Hay Acquisition Co. v. Schneider*, No. Civ. A. 2:04 -CV-1236, 2005 WL 1017804 at *8-9 (E.D. Pa. Apr. 27, 2005) (non-signatory plaintiffs bound by contract's choice of law provisions and forum selection clause); *Interpool*, 635 F. Supp. at 1504-05 (enforcing contract's arbitration clause against third-party claimant because third-party beneficiary is bound by terms of contract even in the absence of its signature); *Process & Storage Vessels, Inc. v. Tank Serv., Inc.*, 541 F. Supp. 725, 733 (D. Del. 1982) (court enforced forum-selection clause against plaintiff suing as third-party beneficiary, and rejected plaintiff's argument that it should not be bound by the forum clause because it had not freely consented to it).

Just like these other courts around the country, this Court should uphold the D.C. Circuit's pronouncement in *Hills* and bind the purported third-party beneficiary (KGP) to the terms in the CV2 Contract. As noted above, in seeking to assert a claim as a third-party beneficiary, KGP must take the contract as it finds it. And the CV2 Contract could not be more explicit with respect to the law that applies here: "Where a dispute arising under a contract requires consideration of the law, the rights and obligations of the parties will be determined by the law of the United States of America." CV2 Contract at Attachment V, Part 1, ¶ 7 (p. __). Because federal law unmistakably applies to Plaintiff's breach of contract claim (Count I), this Court possesses federal subject matter jurisdiction. Accordingly, Defendants removal to this Court is proper.

2.    **Even If State Law Applies (Which It Does Not),** *Boyle* **And Its Progeny Require That The Court Displace State Law And Apply Federal Law.**

Even if KGP could, by some logic, survive the arguments that federal common law applies as a threshold issue, removal nonetheless was proper pursuant to federal question jurisdiction because the well established precedent cited in the Notice of Removal demonstrates that significant federal interests compel this Court to displace any potentially relevant state law.[5]

The Supreme Court's decision in *Boyle*, 487 U.S. 500, necessarily guides this Court's considerations here.  In that case, an individual brought a state law wrongful death action against a government contractor which had provided military goods to the U.S. Government.  Relevant to the removal jurisdictional issue, the *Boyle* Court found federal common law to apply when: (i) a "uniquely federal interest" exists; and (ii) a significant conflict exists between an identifiable federal policy or interest and state law, or the operation of state law would frustrate specific objectives of federal legislation.  *Id.* at 504-07.

As discussed in the Notice of Removal, *see* NOR ¶¶ 17-18, the contractors here meet both prongs of the *Boyle* test for displacing state law.  Several important federal interests exist in this case, including (but not limited to):   (i) increased direct financial liabilities for the Government, and the potential for disgorgement of funds from the U.S. Treasury; (ii) the right of the Government to direct and enforce modifications in contracts to which it is a stated party; (iii) the ability of the Government to maintain flexibility in modifying its contracts, especially those (such as here) involving "dynamic" and "evolving" considerations of national security; (iv) the

---

[5]  Plaintiff devotes much energy to explaining substantive law regarding third-party beneficiaries in the District of Columbia, without explaining why D.C. law would apply under conflict of law principles in the event that state law were somehow to apply.  Defendants do not concede that D.C. law is the appropriate law to apply to this case.  Of course, the simple act of Plaintiff's filing suit in the District of Columbia has no bearing on whether the District of Columbia's substantive law ought apply to any of the asserted claims.

ability of the Government to maintain uniformity in its contracting regimen; (v) the ability of the Government to work cooperatively with its contractors; and (vi) the increased costs to the Government if contractors must account for the uncertainty of claims whenever the Government directs modifications that could conceivably impact any third-party.

In particular, the national security interests implicated through DRMS's surplus property sales and the CV2 Contract are clearly matters of important national interest. *See* GAO Report (in examining the implications on national security of property sales under the CV2 Contract, GAO "found problems in security controls over sensitive excess military equipment that resulted in lost and stolen items, some of which were sold to the public. . . ."). Moreover, Modification No. 11[6] specifically cited the "dynamic" and "evolving" nature of counter-terrorism policies in providing for screening of Controlled Property, *i.e.*, "[a]ny property which DRMS determines is potentially not saleable. . . for any reason related to national security or other statutory obligations of the Federal Government." *See* Modification No. 11 at 4. Inasmuch as Plaintiff has

---

[6] Modification 11 provides in relevant part:

> WHEREAS, DRMS has identified a need to strengthen procedures related to the proper identification and control of property to ensure that restricted property is not released to the public under Sales Contract Number 99-0001-002; and
>
> WHEREAS, the rules defining "Controlled Property" are dynamic due to frequent DEMIL code changes, evolving counter-terrorism policies and other business rules. . . .
>
> 2. . . (D) . . . (2)  DRMS shall ship all Controlled Property to a CPC where batch boxes will be broken down, inspected, and the item identified verification performed by Purchaser's personnel (with Government oversight) as set forth herein. . . .
>
> **Controlled Property:**   Any property which DRMS determines is potentially not saleable due to its DEMIL Code, its end use, or should not be sold to the general public for any reason related to *national security* or other statutory obligations of the Federal Government.

alleged that Modification No. 11 is specifically at issue in this case, *see generally* Compl. ¶¶ 68-78, the national security concerns attendant with the Government's ability to modify the CV2 Contract generally, and to enforce Modification No. 11 specifically, demonstrate that federal common law displaces any potential relevance for state law.

The saliency of national security concerns in the federal contracting arena is a theme that unites *Boyle*'s progeny across courts. For instance, the court in *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1995), considered the reach of *Boyle* in determining whether federal question jurisdiction existed in a dispute between two private parties litigating a controversy arising under a subcontract. In that case, the Court determined that in disputes (even as between subcontractors to a federal contract) that implicate national security, federal law "totally displaces" state law because the federal interest in those contracts requires uniformity. *New SD*, 79 F.3d at 955 (citing *Am. Pipe & Steel Corp v. Firestone Tire & Rubber Co.*, 292 F.2d 640, 543-644); *Boyle*, 487 U.S. at 508 (citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366-67 (1943) (interest in uniform rule can displace state law)).

Whether it be in the contractual setting involving third-party beneficiaries, *see, e.g.*, *Trimble*, 484 F.3d 700, in the tort setting, *see*, *e.g.*, *Roedler*, 255 F.3d 1347, or in other instances outlined above, courts have applied the *Boyle* framework to require the displacement of such state law in favor of federal law when important federal interests so require, as they do here.

**B.    The Federal Officer Removal Statute Also Applies And Provides This Court With Subject Matter Jurisdiction.**

Perhaps hoping that the Court will adopt the "narrow, grudging interpretation of §1442(a)(1)" that the Supreme Court expressly counseled against in *Arizona v. Mannypenny*, 451 U.S. 232, 242 (1981), Plaintiffs urge that this Court reject the alternate invocation of Federal

Officer Removal jurisdiction pursuant to 28 U.S.C. § 1442(a).  Plaintiff does not offer even a single case to support its argument on this point.

As set forth by Defendants in the Notice of Removal, § 1442(a) provides:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
>
> . . . .

(Italics added.)

Section 1442 vests federal courts with subject matter jurisdiction when government contractors demonstrate:  (i) federal officer direction; (ii) a colorable federal defense; and (iii) a causal nexus between the plaintiff's claims and the direction.  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-40 (2d Cir. 2008) (rejecting plaintiffs' request to remand action against Agent Orange manufacturers based on the Federal Officer Removal statute); *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 423 (5th Cir. 2001) (same); *Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99, 105 (D. Conn. 2007) (finding that government contractor satisfied liberal removal standard under § 1442); *Harris v. Rapid Am. Corp.*, 532 F. Supp. 2d 1001, 1003-05(N.D. Ill. 2007) (denying motion to remand where government contractor had removed based on Federal Officer Removal statute).  As demonstrated below, Defendants have amply met the requirements for invoking Federal Officer Removal pursuant to § 1442, while KGP's arguments on the issue are unpersuasive at best.

> **1.    The Notice Of Removal Meets The Low Threshold Required To Invoke Federal Officer Removal Pursuant To § 1442**

Defendants meet the three-part test, set forth above, that courts examine in assessing whether removal is proper under § 1442.

With respect to the federal officer direction, the statute's "'acting under' words are to be interpreted broadly, and the statute as a whole must be liberally construed." *Isaacson*, 517 F.3d at 136. Here, no doubt exists that Defendants were acting under federal officer direction: Plaintiff basis its entire action on the federal CV2 Contract between DRMS and Defendants, and the action that Defendants took at DRMS's direction in connection with Modification Nos. 9 and 11. *Compare* NOR at ¶¶ 5-12 (discussing various terms of CV2 Contract with DRMS), *with Isaacson*, 517 F.3d at 136-137 (finding "acting under" prong satisfied in instance where "Defendants contracted with the Government to provide a product that the Government was using during a war - a product that, in the absence of Defendants, the Government would have had to produce itself. . . . Through their contracts with the Government to produce Agent Orange, the chemical companies 'assisted' and 'help[ed] carry out[] the duties or tasks of' officers at the Department of Defense.").

With respect to the colorable federal defense prong, § 1442 sets a low bar. *Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court"); *Harris*, 532 F. Supp. 2d at 1005-06 (contractor need not prove the defense, but just establish the existence of a colorable federal defense). The government contractor defense and other defenses derivative of actions by the DRMS federal officer satisfy the colorable defense prong. In support of this arguments, Defendants note several points present in the filings and documents presently before the Court, including:  (i) the documented, discretionary contractual direction of DRMS that

Defendants stop sending payments to Plaintiff, and the documented direction of DRMS that Defendants take on additional screening responsibilities for national security reasons, *see* Modification Nos. 9 and 11; (ii) Defendants adherence to DRMS's direct, written contractual directions, *see* Modification No. 9, Complaint at ¶¶ 61 (establishing that Defendants paid KGP until the summer of 2006 - the time DRMS issued Modification No. 9); Angrick Decl. at ¶¶ 15-16; and (iii) the evident connection between the direction and the allegation of damages. *See* NOR at ¶¶ 5-12 (outlining various relevant facts); *id.* at ¶¶ 16-22 (citing various cases involving the government contractor defense); see also Motion to Dismiss at 1-4 & 11-30 (outlining several federal defenses); Reply to Opposition to Motion to Dismiss at 5-21(same).

The final prong -- causal nexus -- is clear based on the Defendants' actions and the facts alleged. Plaintiff's Complaint itself asserts that KGP "received what it [alleges it] was due under the CV2 Contract until the summer of 2006. At that time, Defendants stopping making payments to Plaintiff under the CV2 Contract." Compl. at ¶ 61. Modification No. 9 establishes the reason that DRMS's payments for Plaintiff stopped in August 2006: DRMS (the only party with which Plaintiff had contractual relations) directed that Defendants no longer transmit such payments to Plaintiff. Modification No. 9, at 2-3. Modification No. 9 thus caused the cessation of payments on behalf of DRMS KGP.

### 2.    Plaintiff's Unsupported Arguments On This Issue Are Unpersuasive.

Plaintiff offers nothing to counter the law and facts that Defendants have submitted both above and in the Notice of Removal, but instead relies on uncited, unsupported, and ultimately unavailing assertions that this matter does not fall under the broad umbrella of Federal Officer Removal jurisdiction.

2101201_5.DOC

First, Plaintiff makes the unpersuasive assertion that Defendants' signing the modification by which the Government issued its direction somehow alters the outcome of this case. Pl. Mot. at 13. Of course, federal contracts and modifications to federal contracts typically require the signature of the contractor. If a contractor's contract signature somehow removed the established applicability of § 1442 to federal contractors that followed government contractual direction, the exception long ago would have swallowed the rule, and no government contractor federal officer removal cases would exist today.

Second, as noted above, Defendants need only clear a low bar to demonstrate federal officer direction, a colorable federal defense, and a causal nexus between the two - which Defendants clearly do in this case. Yet, Plaintiff appears to confuse this jurisdictional test with proving the substantive defense raised by Defendants in their Motion to Dismiss. Again without a scintilla of legal citation, KGP somewhat perplexingly asserts that "the Defendants cannot rely upon the [government contractor] defense when the federal government has, as here, waived its sovereign immunity." *Id.* Yet, as more fully explicated in the Defendants' briefs supporting their Motion to Dismiss, *see* Docket Entries 4 and 11, Defendants raise not just a colorable defense, but indeed a persuasive one, inasmuch as they acted in accord with the written contractual direction of the United States and can avail themselves of a perfect federal contractor defense as outlined in *Yearsley v. W.A. Ross Construction*, 309 U.S. 18 (1940), and *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). KGP's arguments based on waiver of sovereign immunity and the Federal Torts Claims Act are clearly inapposite - not only did *Yearsley* predate the FTCA's enactment by several years, but *Yearsley* also noted that the claimant in that case might well have had an action against the United States - though it did not and could not have an action against the contractor for following the direction of the United

States.  It also would strain credulity to believe that plaintiffs could circumvent the protections afforded government contractors across years of Supreme Court precedent through artfully pleading of causes of action.[7]  Indeed, Defendants have averred in their Notice of Removal, and have amply demonstrated in their briefs in support of dismissal, colorable defenses sufficient to satisfy the low threshold required under § 1442.

Third, Plaintiff offers the circular - indeed dizzying - assertion that "Defendants voluntary decision to cease payment to KGP has no causal nexus to the purported directive of a federal officer."  Pl. Mot. at 13.  Notwithstanding this statement by KGP, however, DRMS's Modification No. 9 expressly provided, among other things, that "Effective with Delivery Order 254, the payment originally directed KGP will be included in the proceed sharing arrangement to DRMS, thus making DRMS share equal to 80% rather than 78.2% after deducting KGP's portion."  Modification No. 9 at 2.  A clearer causal nexus is hard to imagine.

The Court should reject KGP's scattershot arguments with respect to Federal Officer Removal jurisdiction and find that Defendants properly invoked § 1442 in the Notice of Removal.

### C.    The Court Also May Have Diversity Jurisdiction Over This Matter - An Issue Not Yet Established.

Contrary to Plaintiff's assertion, Defendants have not at any point "suggest[ed] that federal diversity jurisdiction exists in this case."  Pl. Mot. at 13.  As is plain in the Notice of Removal, the issue of potential diversity jurisdiction in this matter was "not advanced as a basis for removal at present."   NOR at ¶ 32.  Defendants have merely suggested that "diversity

---

[7]   Defendants point the Court to its briefs in support of Defendants' Motion to Dismiss, *see* Docket Entries 4 and 12, for explications of these defenses and incorporate herein by reference those defenses as appropriate for the purposes of opposing Plaintiff's Motion to Remand.

jurisdiction also *may* exist," and thus "reserve[d] their right to further support this Notice at such time as information regarding the Plaintiff (a partnership) becomes available." *Id.*

Defendants continue to preserve the right to present such argument as a basis for removal, pursuant to 28 U.S.C. § 1332, inasmuch as the factual record before this Court remains undeveloped on this point. Although the amount in controversy amply satisfies the diversity jurisdiction threshold, as Defendants noted in the Notice of Removal, "there is insufficient information for them, or this Court, to determine at this time whether removal would also be proper through the exercise of diversity jurisdiction as specified in 28 U.S.C. § 1332." *Id.* Such continues to be the case. The Plaintiff's brief summarily states "that, for the purposes of diversity consideration, it is deemed a citizen of the District of Columbia." Pl. Mot. at 13. Yet that statement is unsupported by any factual record or evidentiary submission necessary to establish the necessary elements underlying that conclusion, such as relevant corporate documents (*e.g.*, bylaws or articles), affidavits or declarations by officers or partners of Plaintiff, public documents (*e.g.*, public filings, tax records, or the Complaint itself), or otherwise.

## IV.    CONCLUSION

For the reasons stated in this Memorandum of Law, Defendants Surplus Acquisition Venture, LLC and Government Liquidation.Com, LLC respectfully request that this Court deny the Motion to Remand filed by Plaintiff Kormendi/Gardner Partners and retain jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1441, 1442 and 1446.

Respectfully submitted,

ARNOLD & PORTER LLP

/s/ Craig Holman
Craig A. Holman (Bar No. 447852)
Matthew D. Michael (Bar No. 477432)
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
Phone:  (202)-942-5000
Fax:  (202) 942-5999

2101201_5.DOC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of April 2008, I caused a true and accurate

copy of the foregoing filing to be served by electronic delivery on counsel of record listed below:

Kenneth B. Weckstein, Esq.
Howard A. Wolf-Rodda, Esq.
Brown Rudnick Berlack Israsels LLP
601 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005
Attorneys for Plaintiff


/s/ Craig Holman
Craig A. Holman
Counsel for Defendants

2101201_5.DOC