**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| KORMENDI\GARDNER PARTNERS, |
| Plaintiff, |
| *v.* |
| SURPLUS ACQUISITION VENTURE, LLC |
| and |
| GOVERNMENT LIQUIDATION.COM, LLC |
| Defendants. |

Case No.: 1:08-cv-00423-HHK

**REPLY MEMORANDUM IN SUPPORT OF**
**KORMENDI\GARDNER PARTNERS' MOTION TO REMAND**

Plaintiff, Kormendi\Gardner Partners ("KGP"), through counsel submits this Reply Memorandum in Support of its Motion to Remand this action to the Superior Court for the District of Columbia. For the reasons stated herein and in KGP's original Motion to Remand and supporting Memorandum of Law, this action should be remanded because it was removed contrary to law by Defendants, Surplus Acquisition Venture, LLC ("SAV") and Government Liquidation.Com, LLC ("GL") (collectively "SAV/GL" or "Defendants").[1] KGP respectfully requests that its motion be granted and states:

**<u>ARGUMENT</u>**

This action should not be before this Court. KGP's lawsuit is a state-law action for breach of contract and quantum meruit. KGP does not anywhere in its complaint allege claims that arise under the laws of the United States. The disposition of this suit will have no impact whatsoever on this country's military readiness, thus there is no

---

[1] Defendants' Notice of Removal of Civil Action by Defendants Surplus Acquisition Venture, LLC and Government Liquidation.Com, LLC shall be referred to as the "Notice of Removal."

cognizable federal national security interest that justifies the displacement of state law. Defendants cannot rely upon the Government contractor defense to support its assertion of federal officer jurisdiction where, as here, there are no tort claims and the federal Government has waived its immunity to contract cases such as this.   And, Defendants cannot reserve their right to assert the lack of diversity jurisdiction where the pleadings show that all parties are residents of the District of Columbia.

As stated in KGP's original Motion to Remand and supporting Memorandum of Law (respectively "Plaintiff's Motion" and "Plaintiff's Memorandum"), this case is quite simple: SAV/GL agreed to pay money to KGP to compensate KGP for financial advisory services that resulted in contracts with the Defense Reutilization and Marketing Service ("DRMS"). Complaint ¶ 22. The Defendants have earned significant profits through the purchase and resale of military surplus and scrap material under the terms of these contracts. Complaint ¶ 21. This program was formulated by KGP.[2] Defendants' obligations to compensate KGP are unambiguously stated throughout their contract with DRMS – most notably in Articles 5 and 16 (respectively establishing the payment terms required of Defendants) of the CV2 Contract.  The CV2 Contract did not purport to give any party the express *right* to terminate payments to KGP.  Yet, without KGP's consent, the Defendants ceased payments to KGP.  Complaint ¶¶ 61, 65-66.

KGP seeks the compensation it is owed pursuant to alternate theories of liability, namely:  (1) breach of contract; and (2) quantum meruit.  KGP seeks relief from SAV and GL because they had an independent duty to compensate KGP pursuant to the

---

[2] The contracts in this case implemented programs (1) to sell surplus property designated by DRMS (known as the "Commercial Venture" or "CV") and (2) to sell scrap material (known as the "Scrap Venture" or "SV").  This action arises out of the contract that implemented and consolidated two components of the Commercial Venture.  *See* Complaint ¶¶ 25-34 and 36-37 (describing history of CV contracts). This contract shall be referred to as the "CV2 Contract."

CV2 Contract based on their agreement with DRMS that they would pay money to KGP for the financial advisory services provided by KGP to develop the commercial venture programs. KGP has not sued the United States Government and does not allege any claim in this action premised on any purported duty of the Government to compensate KGP.  KGP's complaint simply seeks relief from SAV and GL – they are the parties that were required to pay KGP under the terms of the CV2 Contract.

This lawsuit does not allege any claims that arise under federal law.   The Defendants, not KGP, inject federal law into this case through their assertion that KGP's claims may be adjudicated, in part, through the consideration of federal law.  The role of federal law anticipated by the Defendants does not alter the fact that KGP seeks relief under general state-based principles of contract law.  Defendants' assertion of federal officer jurisdiction also is misplaced because their reliance on the Government contractor defense is not colorable where the Government has waived its immunity from contract claims such as those alleged in this action.  In the absence of any sovereign immunity that could be shared between the Government and these defendants, the Government contractor defense cannot supply the colorable federal defense necessary to invoke federal officer jurisdiction.

This court recognizes that "'[f]ederal courts are courts of limited jurisdiction and the law presumes that 'a cause lies outside this limited jurisdiction.'" *Johnson-Brown v. 2200 M Street, LLC*, 257 F.Supp. 2d 175, 177 (D.D.C. 2003) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)).  In deference to the relationship between states and the federal Government, ambiguities concerning the propriety of removal are resolved in favor of remand.  *Id.*

(citing *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999). Unless the Defendants meet the burden of demonstrating that removal is proper, the court must remand the case. *Id.* (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); *Nat'l Org. for Women v. Mutual of Omaha Ins. Co.*, 612 F.Supp. 100, 101 (D.D.C.1985); *Gateway 2000, Inc. v. Cyrix Corp.*, 942 F.Supp. 985, 989 (D.N.J.1996)).

### A. THERE IS NO FEDERAL QUESTION JURISDICTION BECAUSE KGP'S WELL PLEADED COMPLAINT ALLEGES CLAIMS BASED ON STATE, NOT FEDERAL LAW.

Defendants have asserted that this action "raises federal law issues and involves matters of unique and significant federal interest." Notice of Removal at 6.  In opposing KGP's motion to remand, they argue that this action arises under federal law because the "rights and obligations of the parties to a federal contract are determined under federal common law."  Opposition Memorandum at 9.

Their argument ignores a critical point:  KGP's suit rests on general principles of contract law that, in this case, arise under District of Columbia, not federal, law.  To the extent that the analysis of KGP's rights as a third party beneficiary are determined by reference to principles of federal Government contract law, those principles do not conflict with and, indeed, are consistent with the law of the District of Columbia.[3]  The Defendants concede as much when they observe that federal contract law is derived from principles of general contract law unless Congress has legislated otherwise.  *See*

---

[3] The Defendants wonder (at note 5, page 13 of their Opposition Memorandum) why KGP believes that District of Columbia law might govern in this case.  Quite simply, a general partnership, whose partners reside in the District, is suing two LLCs, the members of which also reside in the District.  The complaint demands compensation owed pursuant to obligations that Defendants were, until they breached, performing in the District.  And, but for Defendants' breaches, payments under the CV2 Contract would have continued to be paid in the District.  Thus, District of Columbia law governs this case. *Nelson v. Insignia/Esg, Inc.*, 215 F.Supp. 2d 143, 150-51 (D.D.C. 2002) (District of Columbia had greatest interest in adjudication of contract dispute where contract was executed and to be performed in the District).

Opposition Memorandum at 9 (citing cases for proposition that federal courts apply general contract law principles to develop their own law applicable to Government contracts).

Yet, Defendants construe these cases otherwise quoting, for example, the Fourth Circuit to state that "civil liabilities arising out of the performance by a private contractor of federal procurement contracts are governed by federal common law." *United Kingdom Ministry of Defence v. Trimble Navigation Limited*, 484 F.3d 700, 705-06 (4th Cir. 2007) ("*Trimble II*"). The Fourth Circuit described this notion in greater detail when it considered the *Trimble* case two years earlier.  In that case, the Fourth Circuit observed that

> [T]he law generally applicable to government contract claims is the *same* as would be applied in any commercial breach of contract suit. *See Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." (internal quotations marks omitted); *United States v. Bankers Ins. Co.*, 245 F.3d 315, 321 (4th Cir. 2001) ("It is well settled that, when the United States is a party to a contract, ordinary principles governing contracts and their interpretation remain applicable."). [The plaintiff, a putative third party beneficiary] contends that its claims against the [defendant Government contractor] are subject to ordinary principles of contract law and neither the Government nor [the contractor] have demonstrated otherwise.

*United Kingdom Ministry of Defence v. Trimble Navigation Limited*, 422 F.3d 165, 172 (4th Cir. 2005) (emphasis added).   Thus, the Court concluded that there was no reason to relegate the action to the unique principles and procedures of Government contract law as governed by the Contract Disputes Act of 1978.  *Id.* at 171, 172.

Federal question jurisdiction fails in this case because KGP's complaint seeks relief under District of Columbia law to obtain the compensation to which it is entitled as

a third party beneficiary of the contract between Defendants and the Government and, alternatively, under quantum meruit.  The existence of a federal question is "determined solely by reference to plaintiff's own claim" and "not by reference to statements made in anticipation or avoidance" of possible defenses premised upon federal law.  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 140 (2d Cir. 2005).  Thus, where a complaint does not allege entitlement pursuant to federal law, there is no basis for federal question jurisdiction simply because principles of federal law may govern the interpretation and enforcement of the contract.  *See US Airways Master Executive Council v. America West Master Executive Council*, 525 F.Supp. 2d 127, 135 (D.D.C. 2007)  Accordingly, the litigation of a dispute between private parties under a federal contract will not present questions of federal law that predominate the action simply because principles of federal contract law may be at issue.  *See Whittaker Corp. v. Calspan Corp.*, 810 F. Supp. 457, 462 (W.D.N.Y. 1992).

Here, the causes of action alleged in the complaint arise under District of Columbia law; they do not arise under federal law.  That federal law might affect the rights and obligations of the parties does not create federal question jurisdiction where, on the face of its complaint, KGP does not invoke the federal law of Government contracts as the source of its claim.  Thus, Defendants' argument that the CV2 Contract and selected federal contract cases require the application of federal law to litigate KGP's claim is unavailing because their argument is premised on the anticipation of issues that *may* require adjudication as opposed to recognizing that KGP's complaint, which, for jurisdictional purposes, must be considered on its own, only alleges state law claims.  *US Airways*, 525 F.Supp. at 132-33 (citing *Strategic Lien Acquisitions LLC, v.*

*Republic of Zaire*, 344 F.Supp.2d 145, 148 (D.D.C.2004), citing in turn *Zuurbier v.*
*MedStar Health, Inc.*, 306 F.Supp.2d 1, 4 (D.D.C.2004))

Even if it could be argued that the federal common law of Government contracts
governs the disposition of KGP's third party beneficiary theory, KGP also seeks
damages in quantum meruit for the value of services provided. Quantum meruit is
alleged as an alternative to KGP's third party beneficiary theory.  If, as in this case, a
claim may be "'supported by alternative theories,'" a party cannot assert federal
question jurisdiction unless federal law "is essential to each of those theories."  *Harding-*
*Wright v. District of Columbia Water & Sewer Auth.*, 350 F.Supp. 2d 102, 106, (D.D.C.
2005) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988).
Where one theory may give rise to federal subject matter jurisdiction, such jurisdiction
will not exist if the claim may be supported by another theory that does not implicate
federal law.  *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 153 (4th Cir.
1994) (citing *Christianson*, 486 U.S. at 811); *see also Dixon v. Coburg Dairy, Inc.*, 369
F.3d 811, 816 (4th Cir.2004) (stating that plaintiff's right to relief for a given claim
depends on a question of federal law *only when every legal theory supporting the claim*
*requires the resolution of a federal issue*") (emphasis added).  Quantum meruit, as an
alternative theory, is alleged in the event that KGP cannot rely upon its status as a third
party beneficiary of the contract between the Defendants and DRMS. Because KGP's
quantum meruit claim arises independently of the CV2 Contract, the claim does not rely
on federal law in any manner.

Because the claims alleged in KGP's complaint rest on state law, federal
question jurisdiction cannot exist in this case.

**B. THIS CASE DOES NOT IMPLICATE UNIQUE FEDERAL CONCERNS THAT JUSTIFY THE DISPLACEMENT OF STATE LAW BECAUSE IT HAS NOTHING TO DO WITH NATIONAL SECURITY.**

Defendants also argue that federal question jurisdiction should be invoked on the ground that this action implicates unique federal interests and involves a significant conflict between an "identifiable federal policy or interest and state law" and that "the operation of state law would frustrate specific objectives of federal legislation." *See* Notice of Removal at 7; *see also* Opposition Memorandum at 13.  Thus, Defendants argue that federal jurisdiction is required by *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Defendants proffer that the Government has a unique interest in promoting the uniformity of law when a lawsuit relates to a federal contract that affects national security.  As KGP stated in its opening memorandum: "this is a state law breach of contract case premised on state law applicable to third party beneficiaries; the contract from which this action arises concerns the disposition of surplus Government property, not the provision of material for national security purposes; and, there is no federal policy that conflicts with state law giving legal rights to third party beneficiaries." *See* Plaintiff's Memorandum, at 6-7.

The Defendants disagree and assert that a number of federal interests are at play here. These include: (1) the prospect of financial liabilities for the Government; (2) the right of the Government to modify its contracts; (3) the Government's ability to maintain flexibility in modifying contracts that "involv[e] 'dynamic' and 'evolving' considerations of national security"; (4) the Government's need "to maintain uniformity in its contracting regime"; (5) the Government's desire for cooperation with its

contractors; and (6) costs associated with "the uncertainty of claims whenever the Government directs modifications." Opposition Memorandum at 14.

These concerns are contrived attempts to obfuscate the simple fact that KGP wants to be paid what it is owed by the Defendants. KGP is not demanding compensation from the Government in this case, and the contracts at issue have nothing to do with national security. KGP's action will not interfere with the Government's ability to modify its contracts under the general principles of contract law, the obligations of which are well known to the Government.  Likewise, this action will not in any way hamper Governmental flexibility, the uniformity of its contracting practices, or the degree of cooperation it receives from its contractors.  This action especially will not increase Government costs for fear of claims being asserted "whenever the Government directs modifications that could conceivably impact any third party."  There would be no claim in this case if the Defendants had honored the obligations owed to KGP, especially where KGP is not an anonymous third party that "conceivably" could be affected – **it is a named beneficiary**.  Again, this case is about the payment of money owed by the Defendants, not the Government's independent liability to the extent such liability exists.

The greatest diversion of all, however, is the Defendants' strident invocation of national security concerns as a basis for the assertion of federal jurisdiction in this case. If KGP obtains a judgment in this case, there will be no deleterious impact on this nation's security.   Nothing in KGP's claim against the Defendants will affect the Government's ability to dispose of its surplus and scrap in any manner it sees fit. The Government could, and the text of modification no. 11 demonstrates that the

Government did, modify its contract with the Defendants so as to adopt heightened screening procedures to prevent the release of restricted property. And, the Government paid Defendants extra for those procedures.

Yet, Defendants rely upon the invocation of national security interests described in *Boyle* and its progeny despite the remoteness of this case from the more obvious national security concerns posed when the Government specifies the design of helicopters (as in *Boyle*), or those that arise when a foreign government directly sues a contractor as a consequence of disputes arising out of the company's federal Government contract under the Foreign Military Sales program (*Trimble II*).

Defendants place particular stock in *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1996). That case arose out of a subcontract in which the subcontractor was selected to design and produce a component used for navigation in systems being produced for the Strategic Defense Initiative. The subcontractor, having been terminated for convenience, sued the prime contractor in state court asserting claims under state law. The prime contractor removed the case to federal court and argued that jurisdiction existed because the dispute was governed by federal law. The 9th Circuit accepted, without analysis, the prime contractor's assertion that federal question jurisdiction existed because the subcontract was connected with national security. *Id.* (relying upon *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640 (9th Cir. 1961)).

The 9th Circuit's recognition of federal question jurisdiction in that subcontract dispute, however, has been questioned. The Second Circuit rejected the holding of

*New SD* because it determined that the 9th Circuit failed to consider the nature and degree of relationship of the claim with any specific national security interest. *Woodward Governor Co. v. Curtiss-Wright Flight Systems, Inc.*, 164 F.3d 123, 127 (2d Cir. 1999) (federal law does not govern in absence of significant conflict between state law and federal policy or interest). It is not enough to aver that federal law should govern simply because national security is implicated, the federal concern must be sufficiently unique and connected to the national security interest to justify the displacement of state law.  In *Woodward Governor*, the Second Circuit concluded that, based upon its review of the matter, a dispute that arose under a subcontract to provide test stands for weapons bay doors was found not sufficiently connected to unique national security concerns, thus the case did not warrant the exercise of federal question jurisdiction.  *Woodward Governor*, 164 F.3d at 127.

Defendants' assertion that the *Boyle* analysis warrants the exercise of federal jurisdiction fails to give due consideration to the impact or, more accurately, the lack of impact that this case will have upon unique federal concerns.  The Defendants certainly have a federal Government contract and that contract involves the military.  However, the work under this contract constitutes a largely proprietary (as opposed to discretionary) activity – the resale of surplus Department of Defense property and scrap material.  This dispute has nothing to do with the performance of the work – it simply asserts a demand for payments owed – the payment of which will not, on the face of KGP's complaint, have any impact on national security or military readiness. This case will not even affect the sale of surplus property under the CV2 Contract – except to fulfill KGP's right to due compensation.

For these reasons, federal question jurisdiction does not arise in this case as a result of purported national security concerns.

### C. DEFENDANTS CANNOT INVOKE FEDERAL OFFICER JURISDICTION WHERE THEIR ASSERTED FEDERAL DEFENSE APPLIES ONLY TO TORT CLAIMS – NOT CONTRACTUAL LIABILITY.

This is a contract case, not a tort action. Defendants rely upon the Government contractor defense as the "colorable" federal defense required to assert federal officer jurisdiction. That defense, however, affords immunity to contractors from liability for tort actions and offers Defendants no protection from the contract claims in this case. Thus, it cannot be considered a colorable federal defense in this case under any state of facts. Moreover, the notion that the Defendants' duty to pay KGP was eliminated when the contracting officer directed them to modify the CV2 Contract cannot, even if true, constitute a colorable federal defense – it is nothing more than a defense grounded in general principles of contract law.

In Plaintiff's Memorandum, KGP asserted that Defendants cannot invoke federal officer jurisdiction because the Defendants: (1) were not acting under the direction of a federal officer when they voluntarily agreed with the Government to cease payments to KGP; (2) that the Government contractor defense was not a colorable federal defense; and (3) that the cessation of payments was not caused by a federal officer's directive where Defendants voluntarily agreed with the Government to cease paying KGP. Plaintiff's Memorandum at 12-13. While Defendants criticize KGP for not citing authority to support its argument that federal officer jurisdiction is not available, the Defendants likewise offer no authority to support their position.

The legal authorities that are most pertinent to federal officer jurisdiction center on whether the Defendants can assert a colorable federal defense to this action. The determination of whether a colorable federal defense exists must be considered in the light of the underlying purpose for federal officer jurisdiction under 28 U.S.C. § 1442. "One of the most important reasons for removal is to have the validity of the defense of official immunity tried in federal court." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). In this case, the Defendants assert that they are entitled to the cloak of the Government's immunity by virtue of the fact that they can aver the Government contractor defense enunciated in *Boyle*, *supra*.

In support of their argument, the Defendants state that they acted pursuant to the discretionary contractual directive of DRMS and that they adhered to that officer's written contractual directions. Their argument presumes that the Government contractor defense bestows federal officer jurisdiction upon them if they simply recite the *Boyle* elements and a few facts. That is not sufficient. A contractor may not establish the existence of federal jurisdiction unless the immunity exists in the first instance. And here, there is no immunity. This is not a case where a Government contractor built military hardware to military specifications which exploded and injured a civilian. The Government contractor defense has no applicability in this case.

Here, Defendants ignore a fundamental notion regarding the Government contractor defense: it is an exception to the Government's waiver of sovereign immunity from liability for tort claims. The Government contractor defense derives from the principle that a contractor shares the Government's sovereign immunity if the contractor acts under the authority and direction of a federal officer in his or her performance of

discretionary functions.  *Boyle* and its progeny bestow federal immunity that is reserved to the Government under the discretionary function exception to the Federal Tort Claims Act. Here, there is no claim being asserted under the FTCA; rather, this case alleges a breach of contract and, alternatively, an  entitlement to recover in quantum meruit.  The FTCA's discretionary function exception is not, by definition, at issue.

There simply is no theory of immunity that applies to the Defendants because the Government has waived its immunity with respect to Government contract claims. *See* Contract Disputes Act of 1978, 41 U.S.C. §§ 607, 609.  And, Defendants have not asserted a tort claim.  Since the purpose of federal officer jurisdiction is to require the litigation of immunity defenses in a federal forum, there can be no removal under the federal officer provisions where there is no immunity to be asserted.  *Cf. Winters v. Diamond Shamrock*, 149 F.3d 387, 397 (5th Cir. 1998) (federal review of validity of immunity defense is cornerstone of federal officer jurisdiction).

### D. DEFENDANTS CANNOT "RESERVE" THE RIGHT TO ASSERT A LACK OF DIVERSITY JURISDICTION, ESPECIALLY WHERE IT IS UNCONTROVERTED THAT ALL PARTIES ARE DEEMED RESIDENTS OF THE DISTRICT OF COLUMBIA.

Defendants continue to reserve their right to assert diversity jurisdiction. Plaintiff's Memorandum stated that KGP, SAV and GL all are residents of the District of Columbia. KGP, as a general partnership, is a citizen of any jurisdiction in which its partners reside.  Plaintiff's Memorandum at 13-15.  In KGP's case, its partners reside in the District of Columbia.  KGP further noted that SAV and GL each are citizens of the District of Columbia for diversity purposes by virtue of the fact that its members reside and/or its managing member resides in the District.  There is no diversity jurisdiction in

this case. Defendants' reservation of their rights is of no effect where there can be no dispute that diversity jurisdiction is lacking.

**WHEREFORE**, for the foregoing reasons and the arguments stated in Plaintiff's Motion and Memorandum, which are incorporated herein by reference, KGP respectfully requests that its Motion to Remand be granted.

Respectfully submitted,

Dated: April 21, 2008                        **BROWN RUDNICK BERLACK ISRAELS LLP**

*/s/ Howard A. Wolf-Rodda*
Kenneth B. Weckstein
District of Columbia Bar No. 239301
kweckstein@brownrudnick.com
Howard A. Wolf-Rodda
District of Columbia Bar No. 449377
hwolf-rodda@brownrudnick.com
601 Thirteenth Street, N.W.
Suite 700
Washington, D.C. 20005
(202) 536-1700 (voice)
(202) 536-1701 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that, on this 21st day of April, I caused a copy of the foregoing Reply Memorandum in support of Kormendi\Gardner Partners' Motion to Remand to be served electronically in accordance with the Court's electronic filing guidelines to:

> Craig A. Holman, Esq.
> Matthew D. Michael, Esq.
> Arnold & Porter LLP
> 555 Twelfth Street, NW
> Washington, DC 20004

Dated: April 21, 2008                    ___/s/ Howard A. Wolf-Rodda_____