### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**KORMENDI/GARDNER PARTNERS,**

**Plaintiff,**

**v.**

**SURPLUS ACQUISITION VENTURE, LLC, et al.**

**Defendants.**

</td><td>

**Civil Action 08-00423 (HHK)**

</td></tr>
</table>

### MEMORANDUM OPINION

Kormendi/Gardner Partners ("KGP") brings this action as a third-party beneficiary of a contract between a United States Department of Defense agency, Defense Reutilization and Marketing Service ("DRMS"), and Surplus Acquisition Venture, LLC and Government Liquidation.Com, LLC (collectively "Surplus"). The complaint, which seeks damages for breach of contract or, in the alternative, a recovery in quantum meruit, was filed in the Superior Court of the District of Columbia ("Superior Court"). Surplus removed the action to this court.

Before the court are KGP's motion to dismiss (#4) and its motion remand this action to the Superior Court [#9]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that KGP's motion to remand should be granted and its motion to dismiss likewise should be remanded to the Superior Court.

### I

The facts material to the issues presented by KGP's motion to remand are as follows. KGP provided financial advisory services to DRMS in connection with the sale by DRMS of military surplus property on the private market. KGP and DRMS agreed that KGP would be paid

a percentage of the net proceeds of these sales directly by the purchaser of the property.  At some

point thereafter, Surplus contracted with DRMS to purchase military surplus property from

DRMS and to resell this property on the open market.  Pursuant to the terms of its contract with

DRMS, Surplus paid a percentage of the purchase price and a percentage of the resale price to

KGP.  According to KGP, DRMS and Surplus subsequently modified their contract to eliminate

the payments to KGP without KGP's consent.

## II

KGP argues that this case should be remanded to the Superior Court because this court

does not have subject matter jurisdiction.  Surplus rejoins that this court has subject matter

jurisdiction over KGP's claim for two reasons.  First, Surplus argues that disputes, like this one,

that arise from federal government contracts or contracts involving a uniquely federal interest

must be resolved under federal common law, and thus are properly brought in federal court.[1]

Second, Surplus argues that this court has jurisdiction under the Federal Officer Removal Statute,

28 U.S.C. § 1442(a)(1) ("FORS"), because KGP's alleged damages resulted from a contract

modification initiated by DRMS.  Surplus' arguments are without a merit.

### A.    Federal Question

Although Surplus does not contest that KGP's complaint seeks relief under state law,

Surplus argues that federal question jurisdiction exists because: (1) federal common law must be

---

[1]  Surplus also contends that federal law applies based on a contractual choice-of-law
provision, which states that disputes are resolved "by the law of the United States of America."
(Def.'s Opp'n 10.)  This provision, however, is mentioned only in Surplus' brief; it does not
appear in any other document filed with this court.  Surplus' burden is to prove—not merely to
allege – the propriety of removal jurisdiction.  *See Harding-Wright v. D.C. Water & Sewer Auth.*,
350 F. Supp. 2d 102, 104 (D.D.C. 2005). Consequently, Surplus' fails in its attempt to persuade
this court that it has removal jurisdiction on the basis of a contractual choice-of-law provision.

applied to federal government contracts, and (2) the contract at issue involves an area of unique

federal interest in which federal law displaces state law.  Neither argument is availing.

1.       **Federal Government Contracts**

Surplus contends that federal common law pre-empts state law[2] when the claim involves

a federal government contract.  According to Surplus, the court must apply federal common law

to KGP's claim because the contract giving rise to KGP's claim was awarded to Surplus by a

federal agency.  KGP rejoins that its complaint does not seek relief pursuant to federal law and

that federal question jurisdiction does not exist simply because principles of federal law may

govern the interpretation and enforcement of the contract.  KGP is correct.

With very few exceptions, "[t]he presence or absence of federal question jurisdiction is

governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists

only when a federal question is presented on the face of the plaintiff's properly pleaded

complaint."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted).  Under

this rule, plaintiff is "the master of the claim" and "may avoid federal jurisdiction by exclusive

reliance on state law."  *Id.*  KGP's complaint sets forth a state law cause of action for breach of

contract.  KGP's complaint does not seek relief pursuant to federal law or set forth any claim that

relies on federal law.

Surplus attempts to circumvent the "well-pleaded complaint rule" by arguing that federal

common law pre-empts state law because KGP is bringing suit as a third party beneficiary of a

contract between Surplus and a federal agency.  Surplus' argument cannot be sustained.  It is

---

[2] The law of the District of Columbia is the functional equivalent of "state law" for the
purpose of determining this court's removal jurisdiction.

"settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Id.* at 393. This bar to removal applies "even if the defense is anticipated in the plaintiff's complaint." *Id.* Furthermore, the fact that Surplus might ultimately prove that KGP's claims are pre-empted still "does not establish that [the claim is] removable to federal court."[3] *Id.* at 398. As KGP brings a state-law breach-of-contract claim that does not arise under or seek relief pursuant to federal law, Surplus' removal of this case invoking this court's federal question jurisdiction cannot be sustained.

### 2.   The *Boyle* Exception

In *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988), the Supreme Court set forth an exception to the general rule that state law is not displaced by federal law absent "a clear statutory prescription" or a direct conflict between the two bodies of law. This exception applies when two criteria are met: first, the case must involve "an area of uniquely federal interest"; and second, there must exist "a significant conflict . . . between an identifiable federal policy or interest and the [operation] of state law." *Id.* at 507 (internal quotation omitted). The party seeking to displace state law bears the burden of demonstrating that both conditions exist. *Id.*

*Boyle* was a military procurement case concerning the imposition of civil tort liability on a government contractor for manufacturing a helicopter with an allegedly defective escape hatch,

---

[3] Because Congress has not enacted a statute that completely pre-empts state contract law in the area of federal contract disputes and the Supreme Court has made clear that there is no uniform federal law to be applied in government contract cases, the complete pre-emption doctrine, an independent corollary to the well-pleaded complaint rule, does not apply here. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 691-692 (2006) ("the prudent course . . . [is] to adopt the readymade body of state law as the federal rule of decision until Congress strikes a different accommodation.") (internal citation and quotation omitted).

*id*. at 502-03, that had been manufactured according to government specifications, *id*. at 509. The *Boyle* court held that "the procurement of equipment by the United States is an area of uniquely federal interest," *id*. at 507, and that the design allegedly required by state law was "precisely contrary" to the design specified by the government contract, *id*. at 509.  Accordingly, the *Boyle* court held that federal jurisdiction existed because imposing tort liability on contractors for following government specifications in the procurement context would "directly affect the terms of Government contracts:  either the contractor will decline to manufacture the design specified by the Government, or it will raise its price." *Id*. at 507.

Surplus argues that *Boyle* governs here.  Specifically, Surplus contends that the sale of surplus military property implicates unique federal national security interests and that a significant conflict may exist between federal and state law in the interpretation of the contracts governing those sales.  KGP counters that there are no national security or uniquely federal interests implicated in the government's disposal of surplus or scrap property.  KGP further contends that there are no significant conflicts between state and federal law with respect to the rights of third-party beneficiaries.

The court agrees with KGP.  This case does not involve tort claims arising from military procurement but rather contract claims relating to the disposal of surplus federal property; as such, it does not fall within the *Boyle* rule that military procurement implicates a unique federal interest.  *See id*. at 507.  Indeed, the claims raised by KGP do not implicate unique federal interests at all:  KGP seeks relief from a private litigant; and a judgment in KGP's favor will not

affect the federal government's ability to dispose of surplus military property.[4]  Thus, this case is

more like *Miree v. DeKalb County*, 433 U.S. 25 (1977), than it is like *Boyle*.  *Miree* involved the

question of "whether certain private parties could sue as third-party beneficiaries to an agreement

between a municipality and the Federal Aviation Administration."  *Boyle*, 487 U.S. at 506 (citing

*Miree*, 433 U.S. at 30.)   The court held that federal common law did not govern the action based

on its conclusion that "the resolution of petitioners' breach-of-contract claim against respondent

[would] have no direct effect upon the United States or its treasury."  *Miree*, 433 U.S. at 29. As

in *Miree*, the claims here will have no direct effect on the United States or its treasury.  *See id.*

Accordingly, the court rejects Surplus' contention that federal jurisdiction exists under *Boyle*.[5]

## B.      Federal Officer Removal Statute

---

[4]  Even if the court had found a unique federal interest, the court does not perceive a "significant conflict" between federal and state law regarding the rights of third-party beneficiaries considering that courts often resolve third-party beneficiary claims under the Restatement (Second) of Contracts even when the federal government is a party to the contract. *See, e.g., J.G.B. Enters., Inc. v. United States*, 497 F.3d 1259, 1261 (Fed. Cir. 2007); *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064-65 (D.C. 2008).

[5]  The court also finds that Surplus' reliance on *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1996) ("*New SD*") for the proposition that *Boyle* applies here is misplaced.  In *New SD*, a subcontractor sued a general contractor, which held the prime contract with the United States Air Force to develop certain military equipment. *Id.* at 954.  The action arose when the general contractor terminated the prime contract (and the concomitant subcontract) after the Air Force ordered a series of work slow-downs and a stop-work order. *Id.*  Accordingly, the subcontractor sued the general contractor for breach of contract. *Id.*  Focusing on its precedent, *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640 (9th Cir. 1961) ("*American Pipe*"), rather than the Supreme Court's later decision in *Boyle*, the Ninth Circuit held that federal law controlled. *Id.* at 954-55.  Considering that the Ninth Circuit did not meaningfully apply *Boyle* and that, as discussed above, the instant case does not involve federal military procurement, nor obviously does it involve disputes between general and subcontractors concerning such procurement, the court finds *American Pipe* and its progeny inapplicable here. Moreover, the court notes that other courts have been highly critical of the *New SD* decision. *See, e.g., Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 128 (2d Cir. 1999).

The FORS is an exception to the well-pleaded complaint rule and permits a defendant to remove an action to federal court if the action is brought against "[t]he United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act *under color of such office* . . . ." 28 U.S.C. § 1442(a)(1) (emphasis added); *see Mesa v. California*, 489 U.S. 121, 136 (1989) ("The removal statute itself merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged.").

To remove an action from state to federal court under the FORS, a government contractor defendant must make a three-part showing. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)*; Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136-39 (2d Cir. 2008). First, the contractor must show that he was "acting under" an officer of the United States by demonstrating that the conduct at issue occurred while he was assisting or carrying out the duties of the federal officer. *See Isaacson,* 517 F.3d at 136-37 (citation omitted). Second, the contractor must show that the conduct at issue was "under color of such office" by demonstrating a causal connection between the conduct and asserted official authority. *See id*. at 137-38; *see also Willingham v. Morgan*, 395 U.S. 402, 409 (1969). Third, the contractor only may remove the action to federal court if the contractor can allege a colorable federal defense. *See Isaacson,* 517 F.3d at 138-39; *see also Mesa*, 489 U.S. at 129.

Surplus contends that it meets all three requirements for removal under the FORS. Specifically, Surplus asserts that because DRMS initiated the contract modification that terminated the payments to KGP, Surplus can invoke the government contractor defense and remove this action. KGP counters that Surplus cannot invoke the FORS because it cannot make

7

the third showing—a colorable federal defense—as the government contractor defense is

available only for tort claims whereas KGP raises only contract claims.  KGP's contention is

well-taken.  "The Government contractor defense . . . shields contractors from *tort liability* for

products manufactured for the Government in accordance with Government specifications . . . ."

*Hercules Inc. v. United States*, 516 U.S. 417, 421-22 (1996) (emphasis added) (citing *Boyle*, 487

U.S. at 512); *see also Isaacson,* 517 F.3d at 138 (finding that "the government contractor defense

protects a government contractor from liability under state *tort law* . . . .") (emphasis added).

Because KGP only raises breach of contract and quantum meruit claims, not tort claims, Surplus

cannot rely on the government contractor defense as a colorable defense.  Accordingly, Surplus

likewise cannot rely on it as a basis for removal.

## C.      Jurisdictional Discovery

If the court rejects Surplus' other asserted bases of federal jurisdiction (which it now has),

Surplus asks the court to allow jurisdictional discovery and a hearing on whether this court may

exercise diversity jurisdiction.  KGP contends that there is no need for discovery or a hearing

because it is clear that the parties are not diverse:  KGP's partners reside in the District of

Columbia, and the principal place of business of each defendant is also in the District of

Columbia.  Surplus counters that this court may have diversity jurisdiction because KGP is

considered a citizen of all of the states in which its partners reside, and KGP has offered no

evidence that all its partners reside in the District of Columbia.[6]

A defendant seeking to remove an action from state court bears the burden of establishing

---

[6]  Neither party disputes that KGP's claim for $1.5 million satisfies the amount in
controversy requirement of 28 U.S.C. § 1332(a).

federal jurisdiction. *See McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). Before a court will find that jurisdictional discovery is justified, the party seeking discovery must "demonstrate[] that it can supplement its jurisdictional allegations through discovery . . . ." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) ("GTE"). The party seeking jurisdictional discovery must make "a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *United States v. Phillip Morris Inc.*, 116 F. Supp. 2d 116, 130 n.16 (D.D.C. 2000) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) (holding that it is not an abuse of discretion for a Court to deny a request for additional jurisdictional discovery where the party has already had ample opportunity to conduct discovery); *Caribbean Broad. Sys. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) (noting that "in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant") (additional citation omitted)).

The court finds that jurisdictional discovery is not justified here. Surplus has not set forth specific allegations demonstrating how jurisdictional discovery would serve a legitimate purpose; Surplus asserts only that no evidence establishes that all partners live in the District of Columbia. *See Phillip Morris Inc.*, 116 F. Supp. 2d at 130 n.16. Surplus has not, however, indicated how the pleadings or facts suggest that the partners reside elsewhere. *See id.* Nor has Surplus challenged the contention that defendants are citizens of the District of Columbia. Because Surplus fails to explain how there is anything to be gained from a jurisdictional discovery or a hearing, the court declines to order jurisdictional discovery. *See GTE*, 199 F.3d at 1351-52.

**III.  CONCLUSION**

For the foregoing reasons, it is this 31st day of March 2009, hereby **ORDERED** that

KGP's motion to remand [#9] is **GRANTED**; and it is further **ORDERED** that Surplus' motion

to dismiss [#4] likewise is remanded to the Superior for its resolution there.

An appropriate order accompanies this Memorandum Opinion.

Henry H. Kennedy, Jr.
United States District Judge